635 So.2d 1148 (1994)
EMERGENCY PHYSICIANS ASSOCIATION
v.
OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER, et al.
No. 92 CA 2090.
Court of Appeal of Louisiana, First Circuit.
February 11, 1994.
Rehearing Denied April 15, 1994.
W. Luther Wilson, Baton Rouge, for Our Lady of the Lake Regional Medical Center.
Robert Funderburk, Jr., Baton Rouge, for Emergency Physicians Ass'n.
Before EDWARDS, CRAIN and LeBLANC, JJ.
LeBLANC, Judge.
This appeal is from a trial court judgment awarding Emergency Physicians Association (EPA) nonpecuniary damages for the willful breach of contract by Our Lady of the Lake Regional Medical Center (OLOL).

FACTS
Beginning in 1973, EPA, a partnership formed for the purpose of rendering emergency room medical services, contracted to provide physicians for OLOL's emergency room. The most recent written agreement provided that EPA would maintain round the clock service, beginning January 1, 1980, until 12:00 p.m., December 31, 1980, and for all *1149 subsequent years for which the contract was renewed.
According to the terms of the most current contract, the agreement could be terminated in writing by either party at least sixty (60) days before expiration. Mr. Robert C. Davidge for the hospital and Dr. Roland J. Louque for the partnership, were the only authorized agents of each party and any notice, demand, or consent, required by the contract to be in writing, was to be delivered only to Davidge or Louque.
By letter to Louque, dated October 26, 1982, Davidge gave notice to EPA of OLOL's intent to terminate the contract as of December 31, 1982, because of recent changes in federal regulations, but invited EPA to renegotiate the terms of the agreement during the next sixty (60) days. Louque contacted Davidge and a meeting was scheduled for late November. In the interim, the partners of EPA met and determined the position of EPA concerning the issue of direct billing by the emergency room physicians. The late November meeting was attended by Davidge, Louque and Dr. Roy G. Folse, a partner of EPA; however, Dr. Folse was not authorized by the terms of the EPA/OLOL contract to negotiate or contract with Davidge or OLOL concerning the EPA/OLOL contract. As expected at the meeting, Davidge conveyed to Louque the necessity for direct billing and the need to alter the terms of the contract to provide for direct billing by the physicians. Louque did not agree to the new terms but informed Davidge that EPA would consider the new requirement. However, after a thorough review of the record, we find no other incident of Louque's attempted or actual contact or discussion with Davidge regarding the EPA/OLOL contract.
On December 8, 1982, Drs. Lawrence C. Levanthal and Thomas Miceli, both partners in EPA, submitted to Davidge a written proposal for emergency physician coverage for OLOL which provided for direct billing by the physicians. The written proposal submitted by Levanthal and Miceli was unsolicited by either OLOL or Davidge. On the evening of December 15, 1982, Dr. Jerome B. Peltier, another partner of EPA unauthorized by the terms of the EPA/OLOL contract to negotiate or contract for EPA, telephoned Davidge and asserts he and Davidge orally agreed EPA was to provide emergency room services and to convert to direct billing as of January 1, 1983. Davidge disputes he and Peltier agreed but acknowledges Peltier's phone call informing him of EPA's change in position. By letter dated December 16, Dr. Folse, as earlier noted, an unauthorized agent of EPA, notified Davidge of EPA's willingness to begin direct billing as of January 1, 1983, and requested Davidge update the contract to reflect the changes.
On December 21, 1982, Davidge confirmed by letter, an agreement between OLOL and Drs. Leventhal and Miceli for Leventhal and Miceli to provide full-time emergency physician coverage at OLOL. EPA did not provide any emergency room services for OLOL beginning January 1, 1983.
EPA filed suit against OLOL seeking damages based on breach of contract. EPA claims OLOL actively breached paragraph IV of the contract by negotiating and contracting with individual members of EPA during the term of the existing 1982 contract. Paragraph IV of the contract states:
IV. Confidentiality of Contract.

During the term of this Agreement and any renewals or other extensions thereof, the Hospital [OLOL] will not discuss this Agreement or any similar agreement with any emergency room physician of the Partnership [EPA] except those designated herein. Any similar agreement is defined to mean any agreement to render services in the Emergency Care Unit of the Hospital. However, through mutual written agreement, prior to any initial discussion with contracted emergency room physicians, the Hospital may contact any contracted emergency room physician.
Until their resignations effective December 31, 1982, Drs. Leventhal and Miceli were partners of EPA. EPA claims OLOL's December, *1150 1982 negotiation and contract with Leventhal and Miceli was contrary to and an active breach of the express terms of the contract.
The parties stipulated in their pre-trial order the case was to be tried on the issue of liability only, with the issue of damages bifurcated to a separate hearing if EPA prevailed on the issue of liability. After a two day trial, the trial judge took the case under advisement and later issued written reasons finding a willful breach amounting to an independent tort. Judgment was rendered awarding EPA sixty thousand dollars ($60,000.00) in nonpecuniary damages. From this adverse ruling OLOL appeals.
OLOL assigns as error:
1. The finding by the trial court that the purpose of paragraph IV of the contract was to prevent solicitation of doctors from EPA to compete with EPA.
2. The finding by the trial court that paragraph IV, as interpreted as a non-competition clause, was legal.
3. The finding by the trial court that paragraph IV, as interpreted as a non-competition clause, did not violate public policy.
4. The award of punitive/exemplary damages after a finding that EPA suffered no actual damage.
EPA answered the appeal and seeks an increase in the trial court's award, and/or a remand to the trial court for the purpose of hearing evidence on the issue of damages.

LAW AND DISCUSSION
The disputed provision included within the EPA/OLOL contract is an agreement by OLOL that it will not solicit the partners of EPA to provide emergency room services during the terms of the contract. The clear language and meaning of the contract provision prohibits OLOL from discussing with the partners the terms of the EPA/OLOL agreement or from discussing with the partners any other agreement for the rendering of emergency room services, without prior written approval. This type of agreement has been upheld as valid and not within the prohibition of La.R.S. 23:921.[1]John Jay Esthetic Salon, Inc. v. Woods, 377 So.2d 1363, 1366 (La.App. 4th Cir.1979). The finding by the trial court that the provision prohibited OLOL from soliciting the partners of EPA to perform emergency services and that the contract was legal was not error. These assignments are without merit.
In addition, we readily recognize the duty assumed by OLOL to provide the Baton Rouge area with high quality emergency health care services. However, the restriction placed on OLOL by the contract provision did not, as argued by OLOL, violate public policy. The provision of the contract did not interfere or so burden OLOL that it could not fulfill its duty to the citizens of Baton Rouge. OLOL was free to contact, negotiate and contract with any physician or group of physicians except partners of EPA. This assignment is without merit.
Based on the legality and validity of paragraph IV and the trial court's finding of a willful breach by OLOL, we now address the issue of the award of damages to EPA. We first note that although the parties' pre-trial order stipulated the trial was limited to the issue of liability only, the parties introduced testimony and evidence concerning the issue of damages. Initially, before testimony began, the suit record of a companion case containing extensive financial records of EPA was offered and accepted as a joint exhibit. In addition, Davidge and Louque both testified as to the alleged damage sustained by EPA: the intention by OLOL not to renew the contract and the eventual loss of the contract by EPA; the history of the growth in the dollar amount of services performed by EPA at OLOL; and, specifics concerning *1151 the internal financial arrangements between EPA and its partners.
The trial court, after the two days of trial, issued written reasons which addressed the issue of damages, stating:
There was no penalty clause written into this contract. The measure of damages in penalty clauses should relate to `the probable actual damages within the contemplation of the parties at the time of contracting.' John Jay Esthetic Salon, Inc. v. Woods, [377 So.2d at] pg. 1368. The measure in this case should not be the loss of the contract because the contract was canceled, and the Court finds, more probable than not, OLOL would have entered into a contract with a party other than EPA upon the expiration of the contract with EPA....
. . . . .
Damages should be in an amount which would deter the activity proscribed by the contract but not so great as to, in effect, gain a windfall on a contract which would have been lost anyway. Louisiana jurisprudence has previously recognized recovery for nonpecuniary damages when, as here, the breach was willful and amounted to an independent tort. See, "Nonpecuniary Damages in Breach of Contract: Louisiana Civil Code Article 1934," 37 La.Law Rev. 625, 626, and footnote 9. The Court is of the opinion that sixty thousand dollars ($60,00.00) [sic] is a proper award of damages in this case.
The trial court, after finding no actual damages, based on the termination and probable non-renewal of the contract, awarded sixty thousand dollars ($60,000.00) in nonpecuniary damages. OLOL argues the damage award was punitive.
Louisiana has recognized the award of nonpecuniary damages in a suit for breach of contract when the breach was willful and amounted to an independent tort. We agree with the trial court that the measure of actual damages in this case is zero, because of the definite termination and probable non-renewal of the contract. However, we disagree with the award of nonpecuniary damages. We quote from the same Louisiana Law Review article, 37 La.L.R. 625, 626-27, cited by the trial court:
Recovery has been allowed for nonpecuniary damages when the breach was willful and amounted to an independent tort or the contract was one strongly coupled with matters of personal sensibilities or family interests unquestionably within the contemplation of the parties at the time of the contract, including contracts the breach of which results in foreseeable serious bodily harm or death to a close relation. [footnotes omitted]
The cases noted to support the statement condoning award of nonpecuniary damages for willful, tortious breach are examples of particularly egregious wrongful acts, rising to the level of a tort. They include Vogel v. Saenger Theatres, Inc., 207 La. 835, 22 So.2d 189 (1945), where a disabled person purchased a ticket, entered the lobby and then was not allowed to enter the theater based on a physical handicap which did not greatly impair his abilities. In O'Meallie v. Moreau, 116 La. 1020, 41 So. 243 (1906), over 100 members and guests of a social club, after repeated assurances by the manager before the scheduled event, were informed upon arrival the day of the activity, of the unavailability of the reserved pavilion and picnic area. In Enders v. Skannal, 35 La.Ann. 1000 (1883), workers at a sawmill located on defendant's land were driven off by the defendant, who had armed himself, with threats and violence. In each cited case the breach was easily classified as tortious.
However, the acts in the instant case do not begin to approach the level necessary to equate to an independent tort. The mere acceptance of a written proposal, acknowledged only with a rudimentary "Thank You", nor a letter simply stating the granting of the contract, does not reach the degree essential to categorize the deeds of a party as tortious.
*1152 We also note the contract in the instant case was clearly a business transaction between equal parties and not a contract made for the gratification of a nonpecuniary interest nor was the breach intended to aggrieve or hurt the feelings of the obligee, EPA. La.C.C. art. 1998 comment (a).
Accordingly, we affirm the trial court's finding of no actual damages but reverse the award of nonpecuniary damages for OLOL's breach of the contract. Based on this holding, we pretermit discussion of EPA's assignments of error raised in its answer. Costs of this appeal to be paid by EPA.
AFFIRMED IN PART; REVERSED IN PART.
EDWARDS, J., concurs.
NOTES
[1] At the time in question, La.R.S. 23:921 prohibited employer/employee contracts from containing non-competition clauses unless the employer had incurred a training or advertising expense, and then, limited the duration of such a clause to two years.