PETTIGREW, J.
| gin this appeal, Richard Paul Hough, Larry Ward Kyzer, H & K Engineering, Inc. (“H & K”), and Sylinda Anderson appeal a judgment in favor of CDI Corporation enjoining Mr. Hough and H & K from directly or indirectly soliciting or hiring any employee of CDI Corporation in accordance with an agreement between Mr. Hough and CDI Engineering Group, Inc. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
CDI Corporation, which has an office located in Baton Rouge, Louisiana, provides temporary engineering, information technology, and other professional workers and services to its clients. CDI Corporation was previously part of CDI Engineering Group, Inc., a separate corporate entity but wholly owned subsidiary of CDI Corporation. In 2003, CDI Engineering Group, Inc. changed its name to CDI Engineering Solutions, Inc., and on December 31, 2006, CDI Engineering Solutions, Inc. merged into its parent corporation, CDI Corporation.
In May 1998, Mr. Hough became employed with CDI Engineering Group, Inc. and served as vice-president of operations in Baton Rouge. After CDI Engineering Group, Inc. changed its name and after it merged into CDI Corporation, Mr. Hough continued to serve as vice-president of operations in Baton Rouge for the respective corporate entities, until he resigned on August 3, 2007, which was effective as of September 2, 2007.
In connection with Mr. Hough’s employment, he signed an “Employee Covenants and Agreements on Non-Solicitation, Non-Disclosure and Ownership of Inventions” (“the agreement”) in June 2000. Section A(4)(a) of the agreement (“the non solicitation of employees clause”) provided, in pertinent part, as follows:
4. Non^Solicitation Provisions. For a period of twelve (12) months following the termination of your employment with the Company, you will not:
(a) Directly or indirectly hire or cause to be hired, or solicit, interfere with or attempt to entice away from the Company, any individual who was an employee of the Company within six (6) months prior to such contact, solicitation, interference or enticement. ...
The agreement also contained a non-competition clause and a non-solicitation of the lacompany’s customers clause. It also required Mr. Hough to hold all of the company’s confidential information, including contracts and agreements, in the strictest confidence. The agreement did not specifically define the term “Company.” However, on page four of the agreement, the initials “CEG” appear on the line above “Name of Company.” It is undisputed by the parties herein that the initials “CEG,” as written on the agreement, represents CDI Engineering Group, Inc., the entity *285 that employed Mr. Hough at the time he signed the agreement.
Larry Ward Kyzer was a long-time employee of CDI Engineering Group, Inc. and it successors, CDI Engineering Solutions, Inc. and CDI Corporation, and was under the direct supervision of Mr. Hough. In connection with Mr. Kyzer’s employment, he signed an agreement requiring him to hold all of the information of the company (identified on the last page of the agreement as CDI Engineering Solutions, Inc.) in the strictest confidence. Mr. Kyzer also tendered his resignation on August 3, 2007, which was effective as of September 2, 2007.
While Mr. Hough and Mr. Kyzer were still employed by CDI Corporation, they met with Rick Summers, the owner of Epic Group, Inc. (“Epic”), to discuss forming a new business to compete with CDI Corporation. These discussions resulted in Mr. Hough and Mr. Kyzer tendering their resignations to CDI Corporation. However, on August 22, 2007, prior to Mr. Hough’s and Mr. Kyzer’s resignations being effective, CDI Corporation terminated both Mr. Hough and Mr. Kyzer.
Thereafter, on August 27, 2007, Mr. Hough, Mr. Kyzer, and Mr. Summers formed H & K, with Mr. Hough and Mr. Kyzer each owning 10 percent of the company (and serving on its board of directors) and Mr. Summers and/or Epic owning 80 percent of the company.
Sylinda Anderson was also an employee of CDI Engineering Solutions, Inc. (and later CDI Corporation). Like Mr. Kyzer, Ms. Anderson signed an agreement to hold all of the information of the company (again identified on the last page of the agreement as CDI Engineering Solutions, Inc.) in the strictest confidence. Ms. Anderson left CDI Corporation in September 2007, after being contacted by Mr. Hough and Mr. Kyzer regarding employment at H & K.
|/Thereafter, Mr. Hough also solicited and successfully hired CDI Corporation employee Dale Wilkins. Mr. Hough and/or Mr. Kyzer also solicited CDI Corporation employees Phil Harris, Bruce Thomas, and Jay Hennings to work for H & K. Additionally, two former CDI Corporation employees, Kim Pham and Mai Truong, who left CDI Corporation to work elsewhere, contacted Mr. Hough regarding possible employment at H & K.
On October 2, 2007, CDI Corporation commenced these proceedings by filing a petition for temporary restraining order, preliminary injunction, permanent injunction, and damages. Mr. Hough, Mr. Kyzer, H & K, and Ms. Anderson were named as defendants. CDI Corporation alleged that Mr. Hough and Mr. Kyzer resigned from CDI Corporation with the intention of forming a new corporation to compete against it by soliciting and hiring its employees and soliciting its clients, in violation of the agreement. CDI Corporation also alleged that after H & K was formed, Mr. Kyzer either directed the misappropriation of certain CDI Corporation contract information and forms and that Ms. Anderson, who was then still employed by CDI Corporation, complied, or that Mr. Kyzer had reason to know that the CDI Corporation contract information and forms were derived from Ms. Anderson, who owed CDI Corporation a duty to maintain secrecy. CDI Corporation further alleged that all of these activities were an attempt to gain an unlawful commercial advantage over it by using its confidential information. Therefore, CDI Corporation sought a temporary restraining order and a preliminary injunction enforcing the agreement, precluding Mr. Hough, Mr. Kyzer, and H & K from soliciting or hiring CDI Corporation em *286 ployees, and prohibiting H & K from employing Ms. Anderson. However, CDI Corporation did not seek to enforce either the non competition or the non-solicitation of customers clauses of the agreement.
In opposing the request for injunctive relief, the defendants asserted that the non-solicitation of employees clause was unenforceable because it violated La. R.S. 23:921, which prohibits contracts or agreements that restrains any person’s exercise of lawful profession, trade, or business. The defendants further argued that the agreement could not be enforced by CDI Corporation since Mr. Hough entered into the agreement with CDI Engineering Group, Inc., which ceased to exist when it merged into |aits joarent corporation, CDI Corporation.
Following a hearing on October 11, 2007, the trial court granted CDI Corporation’s request for a preliminary injunction and enjoined “[Mr.] Hough and H & K and those acting in concert or participating with [Mr.] Hough and H & K from directly or indirectly soliciting or hiring any employee of CDI [Corporation] or any individual who has been employed with CDI [Corporation] in the six months prior to such solicitation or hiring prior to August 22, 2008.” However, the judgment specifically did not enjoin H & K from employing Ms. Anderson.[1] A written judgment in conformity with the trial coui't’s ruling was signed on October 17, 2007, and it is from this judgment that Mr. Hough, Mr. Kyzer, H & K, and Ms. Anderson have appealed.[2]
On appeal, the appellants assert that the trial court erred in: (1) issuing a preliminary injunction based upon the agreement between Mr. Hough and CDI Engineering Group, Inc. (a corporation that has merged into another entity and therefore, no longer exists), because the obligation was not a heritable obligation; (2) issuing a preliminary injunction based upon a contract that unlawfully restrained trade in violation of La. R.S. 23:921(A); and (3) issuing a preliminary injunction that was overly broad, enjoined a corporate entity that was not a party to the agreement that formed the basis of the injunction (ie., H & K), disregarded any geographic or other limitation, and extended to employees of a successor entity, contrary to the intent of the agreement.
Because the resolution of assignments of error numbers 1 and 3 depends on whether the non-solicitation of employees clause is enforceable (assignment of error number 2), we address that issue first.
| (APPLICABLE LEGAL PRECEPTS

Preliminary Injunctive Relief

Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue and must show entitlement to the relief sought; this *287 must be done by a prima fade showing that the party will prevail on the merits of the case. Jurisich v. Jenkins, 97-1870, p. 4 (La.App. 1 Cir. 9/25/98), 722 So.2d 1008, 1011, reversed on other grounds, 99-0076 (La.10/19/99), 749 So.2d 597.[3] CDI Corporation asserts that it was entitled to in-junctive relief because the solicitation and hiring of CDI Corporation employees was a direct violation of the agreement. In determining whether CDI Corporation met its burden of proving entitlement to the preliminary injunctive relief, the validity and enforceability of the agreement must be considered. See Vartech Systems, Inc. v. Hayden, 2005-2499, p. 7 (La.App. 1 Cir. 12/20/06), 951 So.2d 247, 255 (in determining whether an employer has met his burden of proving entitlement to injunctive relief against an employee based on an agreement not to compete, the courts must initially consider the validity and enforceability of the agreement sought to be enforced). If the agreement is found to be unenforceable and/or an agreement in restraint of trade or business that does not fall within an exception found in La. R.S. 23:921, the employer is unable to establish that it is entitled to the relief sought. See Vartech Systems, Inc., 2005-2499 at 8, 951 So.2d at 255-256.

Standard of Review

Generally, the issuance of a preliminary injunction by the trial court will not be disturbed on appeal absent a clear abuse of discretion. Vartech Systems, Inc., 2005-2499 at 8, 951 So.2d at 256. However, in this case, the underlying issue is the validity or enforceability of the non-solicitation of employees clause of the agreement. The | ./resolution of that issue requires us to interpret La. R.S. 23:921. The proper interpretation of a statute is a question of law, which we will review de novo. See Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 2006-0582, p. 9 (La.11/29/06), 943 So.2d 1037, 1045.

Principles of Contracts

Contracts have the effect of law for the parties. La. Civ.Code art.1983. If the terms of a contract are clear, the court ■will enforce the contract as written, provided the agreement is not contrary to good morals or public policy. First Nat. Bank of Commerce v. City of Neiv Orleans, 555 So.2d 1345, 1348 (La.1990). Parties are free to contract for any object that is lawful, possible, and determined or determinable. La. Civ.Code art.1971. This “freedom of contract” signifies that parties to an agreement have the right and power to construct them own bargains. Louisiana Smoked Products, Inc. v. Savoie’s Sausage and Food Products, Inc., 96-1716, 96-1727, p. 14 (La.7/1/97), 696 So.2d 1373, 1380. However, the state may legitimately restrict the parties’ right to contract if the proposed bargain is found to have some deleterious effect on the public or to contravene some other matter of public policy. Louisiana Smoked Prod- *288 nets, Inc., 96-1716 at 14, 696 So.2d at 1381. Therefore, in a free enterprise system, parties are free to contract except for those instances where the government places restrictions for reasons of public policy. Id.

Louisiana Revised Statutes 23:921

1962 La. Acts, No. 104, § 1, 2 amended and re-enacted La. R.S. 23:921 to provide as follows:
No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employee is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years.
1 ¡¡Pursuant to 1989 La. Acts No 639, § 1, the Louisiana Legislature completely redrafted La. R.S. 23:921. Louisiana Revised Statutes 23:921(A)(1) now provides: “Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.” The statute then defines the limited circumstances under which such agreements may be valid in the context of certain relationships. See Kimball v. Anesthesia Specialists of Baton Rouge, Inc., 2000-1954, p. 6 (La.App. 1 Cir. 9/28/01), 809 So.2d 405, 410, writs denied, 2001-3316 and 2001-3355 (La.3/8/02), 811 So.2d 883, 886.
DISCUSSION

Unlawful Restraint of Trade in Violation of La. R.S. 23:921 (Assignment of Error No. 2)

Appellants contend that the trial court erred in issuing a preliminary injunction on the basis of the non-solicitation of employees clause because the clause is unenforceable since it restrains Mr. Hough from exercising a lawful profession, trade, or business in violation of La. R.S. 23:921(A)(1). However, CDI Corporation contends that La. R.S. 23:921 does not apply to the non-solicitation of employees clause, and therefore, the agreement is valid and enforceable.
Under the version of La. R.S. 23:921 prior to amendment by 1989 La. Acts No 639, § 1, two Louisiana cases, John Jay Esthetic Salon, Inc. v. Woods, 377 So.2d 1363 (La.App. 4 Cir.1979), writ denied, 395 So.2d 1363 (La.1981) and Emergency Physicians Ass’n v. Our Lady of the Lake Regional Medical Center, 92-2090 (La. App. 1 Cir. 2/11/94), 635 So.2d 1148, writ granted and judgment vacated in part on other grounds, 94-1268 (La.9/16/94), 642 So.2d 179, held that such agreements were valid and not within the purview of the then existing version of La. R.S. 23:921. CDI Corporation asserts that these cases control the resolution of the issue before this court, and that under the holdings of these cases, the agreement by Mr. Hough not to solicit or hire employees of the company is not within the prohibition contained in La. R.S. 23:921, and is, therefore, *289 valid and enforceable. The appellants contend, however, that at the time John Jay Esthetic Salon, Inc. and Emergency Physicians Ass’n were decided, La. R.S. 23:921 did not purport to prohibit 19agreements restraining the exercise of a profession, trade, or business. Rather, it only prohibited certain non-com petition agreements. Thus, appellants argue, this is truly a case of first impression.[4]
In John Jay Esthetic Salon, Inc., the defendants, Culver and Woods, both hairdressers, had entered into separate agreements (one was a lease agreement and the other an employment contract) with the plaintiff, the corporate owner and operator of nine beauty salons. Both agreements provided that in the event of the termination of the agreement, the defendants would not solicit any of the plaintiff’s customers and would not offer, hire, or employ or enter into any partnership, corporation, or other business relationship, directly or indirectly, with any of the plaintiffs present or future students, employees, or independent contractors for a period of two years. Shortly after the defendants had entered into their respective agreements with the plaintiff, both defendants terminated their relationship with the plaintiff. Defendant Culver opened his own shop, and defendant Woods immediately moved into Culver’s shop while seeking other employment, but later began working regularly for Culver.
The plaintiff brought suit for damages against both defendants for breach of contract. The defendants asserted that the provision in each contract relative to soliciting employees of the employer or to engage in a business relationship with them was a non-competition agreement and was invalid as against the public policy stated in La. R.S. 23:921. The fourth circuit held that “the agreement not to solicit the employees of the employer or to engage in a business relationship with them is not within the prohibition of [La.] R.S. 23:921 and is therefore valid and enforceable.” John Jay Esthetic Salon, Inc., 377 So.2d at 1366.[5]
| min Emergency Physicians Ass’n, Emergency Physicians Association (“EPA”), a partnership of physicians formed for the purpose of rendering emergency room medical services, entered into a contract with Our Lady of the Lake Regional Medical Center (“OLOL”) to provide physicians for OLOL’s emergency room. Included within the contract was agreement by OLOL that it would not solicit the individual physician partners of EPA to provide emergency room services during the terms of the contract Thereaf *290 ter, two of the physician partners of EPA resigned from EPA and entered into an agreement with OLOL to provide full-time emergency physician coverage at OLOL. EPA sued OLOL for breach of contract. At trial and on appeal, OLOL asserted that the provision that prohibited OLOL from soliciting the partners of EPA to perform emergency room services was invalid and illegal under La. R.S. 23:921. Citing John Jay Esthetic Salon, Inc., this court concluded that such agreements were valid and not within the prohibition of La. R.S. 23:921. Emergency Physicians Ass’n, 92-2090 at 5, 635 So.2d at 1150. In doing so, this court noted that the restriction placed on OLOL by the contract provision did not violate public policy because the provision did not interfere or so burden OLOL that it could not fulfill its duty to the citizens of Baton Rouge. OLOL was free to contact, solicit, negotiate, or contract with any physician or group of physicians except the partners of EPA. Id.
We have thoroughly reviewed the facts and holdings of John Jay Esthetic Salon, Inc. and Emergency Physicians Ass’n in light of both the prior version of La. R.S. 23:921 and the current version of the statute that governs this case. While we do not find the holdings of these cases to be dispositive of the issue of the applicability of La. R.S. 23:921 to agreements not to solicit employees, we do find them to be instructive in our analysis.
In John Jay Esthetic Salon, Inc. and Emergency Physicians Ass’n, the courts evaluated the enforceability of agreements not to solicit employees in light of the former language of La. R.S. 23:921, which prohibited an employer from requiring or directing an employee to enter into an agreement where the employee agrees “not to engage in any competing business” and provided the specific circumstances under which such agreements would be allowed. Citing Martin-Parry Corp. v. New Orleans Fire Detection Serv., 221 La. 677, 60 So.2d 83 (1952), the court in John Jay Esthetic Salon, Inc. noted that “[a]n agreement not to engage in competition with the employer is vastly different from an agreement not to solicit the employer’s customers or employees or to engage in a business relationship with the employees or contractors.” John Jay Esthetic Salon, Inc., 377 So.2d at 1366. Therefore, the court in John Jay Esthetic Salon, Inc. properly concluded that a non-solicitation of employees agreement did not constitute an agreement “not to engage in any competing business” specifically prohibited by La. R.S. 23:921. Consequently, the statute was not applicable and the agreements were enforceable. In Emergency Physicians Ass’n, this court merely followed the holding of John Jay Esthetic Salon, Inc. and concluded that the agreement was not within the prohibition of the then applicable version of La. R.S. 23:921.[6]
The amendment to La. R.S. 23:921 by 1989 La. Acts, No. 639, § 1 changed the law from a prohibition against agreements between employers and employees for the employee “not to engage in any competing business” to a prohibition against all “contracts or agreements ... by which anyone is restrained from exercising a lawful profession, trade, or business.”
CDI Corporation asserts that even if John Jay Esthetic Salon, Inc. and Emergency Physicians Ass’n are distinguish *291 able because they were decided under the prior version of La. R.S. 23:921, whether an agreement not to solicit employees violates the current version of La. R.S. 23:921 was already decided by the United States Fifth Circuit Court of Appeal in Smith, Barney, Hams Upham & Co., Inc. v. Robinson, 12 F.3d 515 (5 Cir.1994), which found that such an agreement was enforceable because it “simply [did] not meet the definition of the kinds of contracts covered by [La. R.S. 23:921].” Smith, Barney, Harris Upham- & Co., Inc., 12 F.3d at 519.
In Smith, Barney, Hams Upham & Co., In,c., Robinson, a former branch manager of a brokerage office of Smith, Barney, Harris Upham & Co., Inc. (“Smith | ^Barney”), entered into an agreement with Smith Barney during his employment that provided:
[i]n consideration of payment of the 1993 Incentive Compensation to me, I agree that should my employment with Smith Barney terminate for any reason and I become employed at a competitor organization I will not for a one (1) year period directly or indirectly solicit or induce any Smith Barney employee to resign from either (a) the Smith Barney branch office at which I worked; or (b) any other Smith Barney branch office within a fifty (50) mile radius of the competitor organization’s office at which I work, in order for that employee to accept employment at the competitor organization at which I work.
Smith, Barney, Harris Upham & Co., Inc., 12 F.3d at 517.
After entering into this agreement, Robinson left Smith Barney’s employ and began working for Morgan, Keegan & Co., Inc. (“Morgan Keegan”), a competitor organization. Robinson then, after having been advised that the agreement was unenforceable, knowingly breached the agreement not to solicit Smith Barney’s employees by actively recruiting those employees. Smith Barney initiated proceedings against Robinson seeking among other things, an injunction prohibiting Robinson from soliciting Smith Barney’s employees. Robinson claimed that the non-solicitation of employees provision of the agreement was unenforceable under La. R.S. 23:921.
After reviewing the applicable provisions of La. R.S. 23:921, the Fifth Circuit found that the agreement did not possess the attributes of an agreement prohibited by La. R.S. 23:921. In doing so, the court reasoned:
[T]he [a]greement does not restrain Robinson from exercising a lawful profession, trade, or business.... [T]he [a]greement assumes that Robinson will exercise his profession, presumably even as branch manager, with a competitor firm. Robinson is free to recruit stockbrokers or employees for Morgan Kee-gan — anywhere, any time, and from any organization — save only that small class comprising Smith Barney’s employees, a class which he willingly agreed not to solicit.
Smith, Barney, Harris Upham & Co., Inc., 12 F.3d at 519.
The court further concluded that for the agreement to fall “within the ambit of [La. R.S. 23:921],” it would have to find “not only that that recruiting [was] an indispensable ingredient of Robinson’s profession[,] but also that the [a]greement prohibited Robinson from recruiting employees or stockbrokers to work for Morgan Keegan,” which it did not do. Id. The court then found that “Smith Barney did not generally restrain Robinson from recruiting employees for Morgan Keegan” but rather, it | ^“microscopically focused the [a]greement at that aspect of Robinson’s job that would be most damaging to Smith Barney — Robinson’s recruitment of *292 Smith Barney’s employees to work for a competitor organization.” Id. The court then noted in passing that La. R.S. 23:921(C) allows parties to contract to prohibit an employee from engaging in similar business and from soliciting customers, but it did not mention soliciting fellow employees. Therefore, the court considered that omission an implicit legislative recognition that, without more, a narrowly tailored agreement not to solicit employees of the employer was not among the kinds of agreements covered by the statute. As a result, the agreement in the case was not governed by La. R.S. 23:921.
CDI Corporation contends that the reasoning in the Smith, Barney, Hams Up-ham & Co., Inc. case is applicable to this case. CDI Corporation asserts that the non-solicitation of employees clause agreed to by Mr. Hough, like the one agreed to by Robinson, is “microscopically focused” to prohibit him from soliciting a small group of employees and that there is a substantial pool of potential employees all over the world for Mr. Hough to solicit for employment with H & K without violating the agreement. And, like Robinson, CDI Corporation asserts that Mr. Hough is free to recruit employees, with the exception of that small class of individuals Mr. Hough willingly agreed not to solicit for twelve months following his termination with the company. Therefore, CDI Corporation asserts that because Mr. Hough is not prohibited from the performance of his trade, from competing against CDI Corporation, or from soliciting CDI Corporation’s customers, the non-solicitation of employees clause in the agreement signed by Mr. Hough is not a restraint on the exercise of his profession, trade, or business, and therefore, La. R.S. 23:921 is not applicable. We agree.
As in Smith, Barney, Harris Upham & Co., Inc., the non-solicitation of employees clause in the agreement signed in the instant case does not prevent Mr. Hough from exercising his trade, profession, or business. In fact, the agreement assumes Mr. Hough will compete with CDI Corporation. The agreement merely restricts those whom he can recruit for his new company for a period of twelve months following his termination from CDI Corporation. The agreement is reasonable in scope and Induration. Thus, the agreement is not governed by La. R.S. 23:921. The agreement between Mr. Hough and CDI Corporation is valid and enforceable. Heritability of the Agreement (Assignment of Error No. 1)
Appellants assert the trial court erred in allowing CDI Corporation to enforce the agreement because Mr. Hough entered into the agreement with CDI Corporation’s predecessor’s company, CDI Engineering Group, Inc., not CDI Corporation. Appellants argue that the obligation to refrain from post-employment activities is an obligation strictly personal to the obligee and therefore not heritable and not assignable by the obligee. Citing La. R.S. 12:115, as well as Delaware and Pennsylvania law, CDI Corporation contends this argument is without merit.[7] CDI Corporation maintains that the agreement automatically transferred to CDI Corporation, by operation of law, upon its merger with CDI Engineering Group, Inc. We agree with CDI Corporation.
Louisiana Civil Code article 1765 provides, in pertinent part, as follows: “An obligation is heritable when its performance may be enforced by a successor of the *293 obligee or against a successor of the obli-gor. Every obligation is deemed heritable as to all parties, except when the contrary results from the terms or from the nature of the contract.” The agreement before us does not provide that it is not heritable nor can we find any statute or law that provides that an employment agreement is not heritable. In fact, as correctly pointed out by CDI Corporation in brief to this court, Louisiana, Pennsylvania, and Delaware have all enacted a statutory scheme aimed at regulating corporations and the effects of mergers thereof. See La. R.S. 12:115; 8 Del.C. § 259(a); 15 Pa.C.SA § 1929.
Upon the merger of CDI Engineering Group, Inc. into CDI Corporation, CDI Corporation possessed all the rights and privileges of CDI Engineering Group, Inc. See La. R.S. 12:115(C). Moreover, the property and assets of CDI Engineering Group, Inc. were deemed to be transferred to CDI Corporation without further act or deed. See La. R.S. 12:115(D). Thus, the agreement between Mr. Hough and CDI Engineering Group, Inc. was automatically transferred, by operation of law, to CDI Corporation upon its h ¿merger with CDI Engineering Group, Inc., and CDI Corporation was entitled to enforce its provisions.

Scope of Preliminary Injunction (Assignment of Error No. 3)

In assignment of error number 3, appellants assert the trial court erred in issuing a preliminary injunction that is overly broad, enjoins a corporate entity that is not a party to the agreement that forms the basis for the injunction, disregards any geographic limitation, and extends to employees of a successor entity, all contrary to the intent of the agreement. Appellants maintain that because H & K is a separate corporate entity and not a party to any agreement with CDI Corporation, H & K should not have been directly enjoined from the kinds of activities described in the agreement. Appellants argue further that CDI Corporation should not be entitled to “bootstrap” the scope of the agreement between Mr. Hough and CDI Engineering Group, Inc. so as to make it now include all 18,000 of its employees worldwide simply by virtue of an intracompany merger. As an alternative to reversing the trial court and dissolving the injunction, appellants contend this court should conclude that any injunctive relief to which CDI Corporation may be entitled should be limited only to Mr. Hough, individually, and be restricted to the solicitation or employment of those current CDI Corporation employees who formerly worked for CDI Engineering Group, Inc. in its geographic market. We find no merit to this argument.
Pursuant to La.Code Civ. P. art. 3605, a preliminary injunction “shall be effective against the parties restrained, their officers, agents, employees, and counsel, and those persons in active concert or participation with them.” Mr. Hough is president, a member of the board of directors, and part owner of H & K. Thus, it follows that any acts of H & K, even through its other employees, would be in active conceit or participation with Mr. Hough. In oral reasons for judgment, the trial court offered the following with regard to the scope of the preliminary injunction: “I’m also going to grant a preliminary injunction restraining and enjoining Paul Hough and H & K Engineering, Inc., from directly or indirectly soliciting any employee of CDI who is employed by CDI prior to August 22, 2008. After August 22, 2008, everybody is fair game.” The trial court continued, “Now this includes any indirect solicitation through |lfiany employee, officer, director, agent, counsel or those acting in concert or participation with them prior *294 to August 22, 2008. That means that Ms. Anderson and Mr. Kyzer cannot do that which Mr. Hough is directly refrained from doing.” Based on these reasons, the trial court enjoined both Mr. Hough and H & K from directly or indirectly soliciting or hiring any CDI Corporation employees. As noted by CDI Corporation in brief, an injunction that would allow H & K to corporately do the exact same thing that Mr. Hough is prohibited from doing individually would be worthless. We agree and find no error in the scope of the preliminary injunction as ordered by the trial court.
CONCLUSION
For the above and foregoing reasons, we affirm the October 17, 2007 judgment of the trial court. All costs of this appeal are hereby assessed to the defendants/appel.lants, Richard Paul Hough, Larry Ward Kyzer, H & K Engineering, Inc., and Sy-linda Anderson.
AFFIRMED.
WELCH J., dissents and assigns reasons.
CARTER, C. J. dissents for reasons assigned by Judge WELCH.

. The judgment also enjoined Mr. Hough, Mr. Kyzer, H & K, Ms. Anderson, and those acting in concert with them from using, providing, delivering, or disclosing certain documents and other confidential information of CDI Corporation to any individual or entity, including H & K. However, no issues have been raised in this appeal with regard to that portion of the judgment.

. Mr. Hough, Mr. Kyzer, H & K, and Ms. Anderson also filed a supervisoiy writ application seeking review of the trial court’s ruling in this regard. However, because Mr. Hough, Mr. Kyzer, H & K, and Ms. Anderson had already filed this appeal seeking review of the grant of the preliminary injunction in accordance with La.Code Civ. P. art. 3612, this court declined to exercise its supervisory jurisdiction. See CDI Corporation v. Richard Paul Hough, Larry Kyzer, H & K Engineering, Inc., and Sylinda Anderson, 2007-2432 (La. App. 1 Cir. 2/12/08) (unpublished writ action).

. However, if an employee enters into an agreement with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of tire employer pursuant to La. R.S. 23:921(C), and fails to perform his obligation under such an agreement, the court shall order injunctive relief without a showing of irreparable injury upon proof by the employer of the employee's breach of the agreement. La. R.S. 23:921(H). In this case, although Mr. Hough also agreed not to engage in a business that competes with the company and not to solicit customers of the company, those agreements do not meet requirements set forth in La. R.S. 23:921(C), and therefore, CDI Corporation does not seek to enforce those agreements. Therefore, in order to be entitled to injunctive relief, CDI Corporation had the burden of showing it would suffer irreparable injury if the injunction did not issue and entitlement to the relief sought.

. We note that since La. R.S. 23:921 was amended by 1989 La. Acts No. 639, § 1, the fifth circuit has addressed the issue of whether a non-solicitation of employees clause is covered by La. R.S. 23:921. In Bell v. Rimkus Consulting Group, Inc. of Louisiana, 2008-491 (La.App. 5 Cir. 1/13/09), 8 So.2d 64, the court found that although the non-solicitation of employees clause was not specifically covered by La. R.S. 23:921, it was against public policy as written because it did not provide a reasonable time limit on the prohibition against the plaintiff's actions in soliciting the employees of his former employer. Thus, the court held that the provision was invalid and not enforceable. Bell, 2008-491 at 3, 8 So.2d at 67. However, Beil is distinguishable from the one before us as the agreement in the instant case is reasonable in both scope and duration.

. In reaching this conclusion, the fourth circuit relied on Martin-Parry Corp. v. New Orleans Fire Detection Serv., 221 La. 677, 60 So.2d 83 (1952), which held that a provision in a contract not to solicit the employers’ employees was enforceable. However, Martin-Parry Corp. was decided before the enactment of La. R.S. 23:921 by 1962 La. Acts., No. 104, and therefore, the applicability of La. R.S. 23:921 to such an agreement was not discussed.

. At the time this court rendered its decision in Emergency Physicians Ass'n., La. R.S. 23:921 had been amended by 1989 La. Acts, No. 639, § 1. However, this court determined that the prior version of La. R.S. 23:921 was the applicable statute to the case because the contract at issue had been confected under the prior version of La. R.S. 23:921.

. Although Mr. Hough worked in CDI Corporation’s Baton Rouge office and all of the events in this case took place in Louisiana, CDI Engineering Solutions, Inc. was incorporated in Delaware and CDI Corporation was incorporated in Pennsylvania.