PETTIGREW, J.
 

 | gDefendants/appellants, the State of Louisiana, through the Division of Administration, the State of Louisiana, through the Department of Economic Development, and the State of Louisiana, through the Office of Entertainment Industries Development (“the State”), appeal from the trial court’s judgment in favor of plaintiff/appellee, Red Stick Studio Development, L.L.C. (“Red Stick”), in a suit involving a dispute over the proper interpretation of Section 3(C) of Act 456 of the 2007 Regular Session of the Legislature (“Act 456”). Act 456 amended La. R.S. 47:6007, which concerns motion picture investor tax credits for both productions and infrastructure. Section 3(C) of Act 456 concerns grandfathered infrastructure projects, projects for which an application for pre-certification or initial certification was filed on or before August 1, 2007. This portion of Act 456 is commonly referred to as “the Grandfather Clause.” For the reasons that follow, we affirm.
 

 PERTINENT FACTS AND RULING OF THE LOWER COURT
 

 According to the record, on February 27, 2007, Red Stick submitted an application for motion picture investor credits for a “State-certified infrastructure project” as defined in La. R.S. 47:6007 B(12) as follows:
 

 (12) “State-certified infrastructure project” shall mean a film, video, television, and digital production and postproduction facility, and movable and immovable property and equipment related thereto,
 
 *805
 
 or any other facility which supports and is a necessary component of such proposed state-certified infrastructure project, all as determined and approved by the office, the secretary of the Department of Economic Development, and the division of administration under such terms and conditions as are authorized by this Section. The term “infrastructure project” shall not include movie theaters or other commercial exhibition facilities.
 

 Red Stick’s application and application fee were submitted in accordance with the requirements of La. R.S. 47:6007 D(2)(a)(ii) and D(2)(b)(ii), which provide as follows with regard to applying for motion picture investor credits:
 

 (2)(a) Application. An applicant for the motion picture investor credit shall submit an application for initial certification to the office and the secretary of the Department of Economic Development and, in the case of infrastructure projects, to the office, the secretary, and the division of administration that includes the following information:
 

 [[Image here]]
 

 ls(ii) For state-certified infrastructure projects the application shall include:
 

 (aa) A detailed description of the infrastructure project.
 

 (bb) A preliminary budget.
 

 (cc) A complete detailed business plan and market analysis.
 

 (dd) Estimated start and completion dates.
 

 (b) If the application is incomplete, additional information may be requested pri- or to further action by the office or the secretary of the Department of Economic Development or, in the case of infrastructure projects, the office, the secretary, and the division of administration. An application fee shall be submitted with the application based on the following:
 

 (i) 0.2 percent times the estimated total incentive tax credits.
 

 (ii) The minimum application fee is two hundred dollars, and the maximum application fee is five thousand dollars.
 

 On August 27, 2008, the State made the determination that Red Stick’s project, with estimated expenditures of $665,500,000.00, met all of the criteria for the issuance of the Initial Certification Letter. The letter provided as follows:
 

 In the opinion of the Department of Economic Development (DED) and the Office of Entertainment Industries Development (OEID), as approved by the Louisiana Division of Administration (DOA), certain descriptions of the project outlined in your submission, dated February 27, 2007, referenced above as supplemented by additional information provided by you, appear to meet the criteria of an infrastructure project under the Louisiana Motion Picture Incentive Act. You may proceed as a “State-Certified Infrastructure Project” in the meaning of R.S. 47:6007(B)(12), as of the effective-date of the statute, July 1, 2005, provided that expenditures are made for “infrastructure” as provided by law and determined by the State. Although your project appears to meet the criteria of a State-Certified Infrastructure Project, you should be aware that the administrative rules implementing the procedures and guidelines on the tax credit program for state-certified infrastructure projects are in the process of promulgation in accordance with law. Application of these rules will govern the expenditures that are qualifying “investment” and may ultimately limit or apportion the amount of your proposed investments that will qualify for the tax credits authorized by the Act. Subject to this limitation, to the extent that the actual expenditures are in conformance
 
 *806
 
 with the rules, then the expenditures for the infrastructure project you describe qualify for the following credits described in R.S. 47:6007 Section 3(B), as follows:
 

 [[Image here]]
 

 (ii) Since this application was filed on or before August 1, 2007, the applicant shall have until January 1, 2010, to earn tax credits on this project.
 

 In response to this letter, Red Stick filed a petition for mandamus, arguing that the language contained in the paragraph numbered (ii) in the August 27, 2008 Initial ^Certification Letter was not found anywhere in La. R.S. 47:6007 or in Act 456. Red Stick prayed for the issuance of a writ of mandamus directing the State to remove the requirements contained in paragraph (ii) and either not replace them or replace them with the language taken directly from the Section 3(C) of Act 456. Red Stick subsequently amended its petition for mandamus, requesting a declaratory judgment concerning the meaning of La. R.S. 47:6007 as amended by Act 456.
 

 On November 24, 2008, the petition for mandamus was argued by the parties, who advised the court that a stipulation had been reached wherein the parties agreed that paragraph (ii) of the Initial Certification Letter dated August 27, 2008, be replaced with the language from Section 3(C) of Act 456. Red Stick reserved its right to proceed with a declaratory judgment action, and the parties agreed that the request for a writ of mandamus would be dismissed with prejudice. The stipulation was agreed to by all parties on December 3, 2008.
 

 Trial on the petition for declaratory judgment was held on March 10-16, 2009. In a judgment signed March 25, 2009, the trial court found in favor of Red Stick, declaring that Section 3(C) of Act 456 is clear and unambiguous and that the term “qualify for” means that an application must receive its Initial Certification Letter and spend a minimum of 20 percent or $10 million of the total base investment provided for in the Initial Certification Letter that is unique to film production infrastructure before January 1, 2010. Thereafter, the application may earn 40 percent infrastructure tax credits for the life of the project. The trial court also ordered that the December 3, 2008 stipulation previously entered into by the parties be made the judgment of the court. This appeal by the State followed.
 

 ASSIGNMENTS OF ERROR
 

 1. The trial court erred in concluding that Section 3(C) was “clear and unambiguous” and that the words “qualify for” mean that an application must receive (i) its initial certification letter and (ii) spend a minimum of 20% or $10 million of the total base investment provided for in the initial certification letter that is unique to film production infrastructure before January 1, 2010; if it does so it may earn tax credits after January 1, 2010, until the project is finished.
 

 | b2. The trial court erred in allowing the testimony of supposed legislative intent by legislators; evidence of statements (including post-enactment statements) by legislators concerning the meaning of Section 3(C); evidence of private communications with legislators concerning supposed legislative intent; and the opinions of numerous non-legislators concerning their interpretation of Section 3(C) during the five day trial.
 

 3. The trial court erred in failing to consider the contemporaneous legislative history of Act 456 of 2007.
 

 4. The trial court erred in failing to conclude that Section 3(C) means that an application filed on or before August 1, 2007, shall have twenty-four months in
 
 *807
 
 which to make expenditures for which tax credits are sought. Expenditures made after January 1, 2010, may not earn tax credits.
 

 DISCUSSION
 

 The proper interpretation of a statute is a question of law, which we review
 
 de novo. CDI Corp. v. Hough,
 
 2008-0218, p. 7 (La.App. 1 Cir. 3/27/09), 9 So.3d 282, 287. Legislation is the solemn expression of legislative will. La. Civ. Code art. 2. The interpretation of a statute begins with the language of the statute itself.
 
 Denham Springs Economic Development Dist. v. All Taxpayers, Property Owners,
 
 2004-1674, p. 6 (La.2/4/05), 894 So.2d 325, 330. Louisiana Civil Code article 9 instructs that when a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. art. 9;
 
 Denham Springs,
 
 2004-1674 at 6-7, 894 So.2d at 330-331.
 

 However, when the language of a statute is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.
 
 State Farm Mut. Auto. Ins. Co. v. U.S. Agencies, L.L.C.,
 
 2005-0728, p. 4 (La.App. 1 Cir. 3/24/06), 934 So.2d 745, 747-748,
 
 writ denied,
 
 2006-0933 (La.6/16/06), 929 So.2d 1288. When a statute is ambiguous or when its literal construction produces an absurd or unreasonable result, the letter must give way to the spirit of the law and the statute construed to produce a reasonable result.
 
 Fontenot v. Chevron U.S.A. Inc.,
 
 95-1425, p. 7 (La.7/2/96), 676 So.2d 557, 562.
 

 |,Jn ruling in favor of Red Stick, the trial court issued the following detailed oral reasons for judgment:
 

 [I]t appears to this court ... that the law is clear and unambiguous. To qualify for, that means to meet the condition to this court. The conditions being A, B, and C. Thereafter, you move for-ward_ It appears that the Legislature in their infinitive wisdom made a determination and wrote a statute, had the votes going in; they knew they had the votes, passed what they wanted to pass in [lighting] fashion as they typically do the last day of the [session] ... knowing they could pass it, but also knowing that it’s subject to a gubernatorial veto if the executive branch doesn’t want it. So it could have easily have been vetoed. This court is firmly of the opinion that this is a clear and unambiguous statute. Therefore, the court does not need to go looking for a legislative intent, and it will apply it so that it does not reach any absurd consequences. Having said that, however, if the court were going to look for legislative intent, certainly, it is embodied in the testimony of the House and Ways Chairman, Taylor Townsend, who clearly and unequivocally and even unabashedly testified [to] exactly what goes on down at the Legislature. Now, the Legislature is the most plenary of the three branches, the most powerful of the three branches, because it represents the exercise of the people to govern themselves by their Legislators. Closest to the people is the House of Representatives.... The Senate being the upper chamber yields to the House from time to time, but it’s supposed to exercise more reason than the house. Be that all as it may, but once the committee has been appointed, the conference committee, and this particular one was unanimous, once they made their decision, the ball carrier gets the ball over to the House and that’s what happened here. Mr. Townsend had his votes lined up without respect to merits and without respect to the nuances because it was a clear understand
 
 *808
 
 ing going in. Therefore, the court will hold as a matter of law that this statute is clear and unambiguous. [Red Stick] qualified when [it] reached condition number three and got that pre-certification letter. [It] has from that point until [it] finishes [the] project to claim the forty percent tax credit. Judgment to be signed accordingly.
 

 After a thorough review of the record in this case, we agree with the trial court’s finding that Section 3(C) of Act 456 is clear and unambiguous, and its application does not lead to absurd consequences. Section 3(C) of Act 456 provides as follows:
 

 (C) An application for an infrastructure project filed on or before August 1, 2007, shall have twenty-four months from the date of approval of the rules or January 1, 2008, whichever is earlier, in which to qualify for the forty percent tax credits earned on expenditures. Tax credits on infrastructure projects shall be considered earned in the year in which expenditures are made, provided that a minimum of twenty percent or ten million dollars of the total base investment provided for in the initial certification that is unique to film production infrastructure shall be expended before infrastructure tax credits can be earned on expenditures. The payment of tax credits may extend beyond or be made after the year expenditures are made. [Emphasis added.]
 

 |7We agree with the trial court’s determination that the words “qualify for” as they are used in Section 3(C) mean that an application filed on or before August 1, 2007, must (1) apply for and receive its Initial Certification Letter and (2) spend a minimum of 20 percent or $10 million of the total base investment provided for in the Initial Certification Letter that is unique to film production infrastructure before January 1, 2010. Thereafter, it is qualified to earn 40 percent infrastructure tax credits for the life of the project. The law is to be applied as written with no further interpretation made in search of the intent of the legislature.
 
 [1]
 
 La. Civ. Code art. 9.
 

 DECREE
 

 Accordingly, we affirm the judgment of the trial court in all respects. Appeal
 
 *809
 
 costs in the amount of $4,721.10 are assessed against defendants/appellants, the State of Louisiana, through the Division of Administration, the State of Louisiana, through the Department of Economic Development, and the State of Louisiana, through the Office of Entertainment Industries Development. We issue this memorandum opinion in accordance with Uniform Rules-Courts of Appeal, Rule 2-16.1 B.
 

 AFFIRMED.
 

 [1]
 

 . We note, as did the trial court in its oral reasons for judgment, that if we were to look past the language of Act 456 and consider other evidence of record in search of the intent of the Legislature, our conclusion would remain the same, i.e., that the Legislature passed Act 456 with no deadline for incurring expenditures for "grandfathered projects.” Rather, the Legislature established a minimum expenditure of 20 percent or $10 million of the total base investment to be expended within the twenty-four month time period before a project is able to earn any tax credits. The record is replete with testimony to support such a finding. Thus, although we need not look for additional evidence of legislative intent in the instant case, a complete record was made below by the trial court. Moreover, we find no error in the trial court's decision to allow numerous witnesses, including legislators, to testify during the five-day trial concerning their interpretation of Sec-lion 3(C). Louisiana Revised Statutes 24:177 provides as follows with regard to the admissibility of evidence to determine legislative intent:
 

 B. (1) The text of a law is the best evidence of legislative intent. (2)(a) The occasion and necessity for the law, the circumstances under which it was enacted, concepts of reasonableness, and contemporaneous legislative history may also be considered in determining legislative intent.
 

 The statute also enumerates what "shall not constitute proof or indicia of legislative intent,” but as correctly pointed out by Red Stick in brief, "[njotably absent is a prohibition on the use of trial testimony of legislators, or members of the executive branch, or the prohibition on the examination and use of the prior versions of what was ultimately enacted by the legislature.”