United States Court of Appeals,

Fifth Circuit.

No. 92-9590.

TEAM ENVIRONMENTAL SERVICES, INC., Formerly Leak Repairs, Inc., A Texas Corporation, Plaintiff-Appellee,

v.

Rory K. ADDISON, Dwayne S. Dugas, Thomas C. Prestridge, and William H. Zimmerman, Defendants-Appellants.

Sept. 17, 1993.

Appeal from the United States District Court for the Middle District of Louisiana.

Before POLITZ, Chief Judge, REYNALDO G. GARZA and JOLLY, Circuit Judges.

POLITZ, Chief Judge:

Former employees of Leak Repairs, Inc. (LRI), now Team Environmental Services, Inc., appeal the grant of a preliminary injunction enforcing an agreement not to compete. Finding that the agreement violates the controlling Louisiana statute and may not be reformed, we vacate the injunction and render judgment for the defendants.

Background

LRI is a Texas corporation specializing in the detection and repair of industrial piping system leaks, including fugitive emissions repair. The four appellants herein, Rory K. Addison, Dwayne S. Dugas, Thomas C. Prestridge, and William H. Zimmerman, worked in its Baton Rouge, Louisiana branch office. Zimmerman was a sales representative who was discharged on February 7, 1992 for poor performance. Within three weeks, he obtained employment as a sales representative and branch manager with Leak Stop, Inc., an LRI competitor. Addison and Dugas, assistant technicians, resigned from LRI to accept employment as technicians with Leak Stop on March 8, 1992. Prestridge, first an assistant technician and then a sales representative with LRI, resigned on September 17, 1992 and also went to work for Leak Stop. All four worked in Leak Stop's Baton Rouge office.

In the course of their employment with LRI each of the four signed employment agreements

containing a covenant not to compete. The agreements provided in pertinent part:

> [F]or a period of two (2) years following the voluntary or involuntary termination of Employee's employment hereunder, Employee shall not ... act as an ... employee ... or manager ... [of] any business activity which is competitive with any services offered by, or any business activities pursued by Employer at the time of termination, within a two hundred (200) mile radius of Employee's base of operations at the time of termination....

The agreements also contained a savings clause, which stated:

> Should a court of competent jurisdiction declare any of the covenants contained in this Paragraph unenforceable due to an unreasonable restriction of duration or geographical area, such court shall have the express authority and consent of the parties to this Agreement to reform these covenants to a reasonable restriction....

On November 2, 1992, LRI brought the instant action to enforce the agreements. Although the contractual geographical term was broader than that permitted by statute, the district court issued a preliminary injunction enforcing the agreements to the extent permitted by Louisiana law, enjoining the defendants from working for a competitor for a period of two years within any of the 13 Louisiana parishes and 5 Mississippi counties in which LRI worked. It also enjoined Zimmerman and Prestridge from soliciting LRI customers. This appeal timely followed.

Analysis

The sole issue presented for review is whether the covenants not to compete are enforceable. The parties agree that the applicable law in this diversity case is that of Louisiana.[1] We review the district court's determination that the agreements are enforceable under Louisiana law *de novo,*[2] and conclude that they are not.

The instant noncompetition agreements are governed by La.R.S. 23:921 as amended in 1989 and 1990. The statute provides in pertinent part:

> A. Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.

---

[1]Although three of the four agreements call for application of Texas law, the defendants argue, and LRI does not dispute, that Louisiana law controls in light of its strong public policy against covenants not to compete. *See* La.Civ.Code articles 3537, 3540. The defendants raise for the first time on appeal that the contractual choice of law should prevail if Louisiana law does not bar enforcement.

[2]*Concise Oil & Gas Partnership v. Louisiana Intrastate Gas Corp.,* 986 F.2d 1463 (5th Cir.1993).

....

> C. Any person ... who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

On their face, LRI's agreements do not conform to the statutory requirements because they prohibit competition within 200 miles of the employees' base of operations rather than specifying the parishes or municipalities in which LRI does business. LRI, however, advances two arguments that the agreements nonetheless should be enforced: (1) the statutory provisions describing permitted noncompetition agreements should be broadly construed because the 1989 amendment represents a reversal in public policy; and (2) the inconsistency is merely a technical deficiency which does not justify discarding the agreements, especially where, as here, the agreements contain a savings clause expressly providing for reformation. Louisiana jurisprudence, albeit nascent in this area, is to the contrary.

Louisiana's longstanding policy against covenants not to compete was codified in 1934. In 1962 the legislature exempted from its blanket bar those situations in which the employer had invested substantial amounts in the training or the advertising of the particular employee.[3] In 1989 the legislature redrafted the statute to broaden the exceptions. The amended statute, however, retains the general proscription; the first subsection proclaims that every agreement not to compete shall be null and void, except for those explicitly sheltered. We do not perceive this as a reversal in public policy, nor have those Louisiana intermediate appellate courts which have addressed the issue.[4] "As the statute itself so plainly says," the Second Circuit stated in *Comet Industries, Inc. v. Lawrence,* "these contracts are against public policy...."[5] The Fourth and Fifth Circuits expressly or implicitly

---

[3]*Orkin Exterminating Co. v. Foti,* 302 So.2d 593 (La.1974).

[4]A federal court sitting in diversity must follow decisions of the state's intermediate appellate courts, unless convinced by persuasive data that the highest court would decide differently. *Exxon Co., U.S.A., a Div. of Exxon Corp. v. Banque De Paris Et Des Pays Bas,* 889 F.2d 674 (5th Cir.1989), *cert. denied,* 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990).

[5]600 So.2d 85, 87 (La.App.), *writ denied,* 604 So.2d 1002 (La.1992).

have held the same.[6]  Therefore, "a contract seeking to fit into an *exception* to this rule must strictly comply with the requirements contained in the statute."[7]  LRI's contracts do not.

Nor can these contracts be saved through reformation.  In *Comet,* the Second Circuit refused to reform and thereby validate a contract proscribing competition in the continental United States despite a savings clause similar to that incorporated in LRI's contracts.  Similarly in *Water Processing Technologies, Inc. v. Ridgeway,*[8] the Fourth Circuit declined to save by reformation a noncompetition clause in a distributorship agreement in which the geographic term was omitted, even though the limits of the clause could be inferred from the distributorship agreement.  LRI maintains that its geographic term comes much closer to the statutory requirement and hence should be reformed and enforced.  We are not persuaded.  Finding the locational limitation too uncertain, the Fourth Circuit in *Medivision, supra,* invalidated an agreement prohibiting competitive employment within ten miles of any of the employer's offices in the Greater New Orleans area.  The LRI agreements *sub judice* inform with far less certainty the area in which its employees are precluded from accepting competing employment.

La.R.S. 23:921 permits noncompetition agreements only in parishes or municipalities where the employer "carries on a like business";  LRI's agreements barred competition in a far larger area.  As the district court found, LRI engaged in leak detection and repair services in a 13-parish area in the vicinity of the petrochemical corridor along the Mississippi River between Baton Rouge and New Orleans, as well as in five counties in Mississippi.[9]  The agreements, however, covered a 200-mile radius area around Baton Rouge, including most of Louisiana, a substantial portion of Mississippi,

---

[6]*Medivision, Inc. v. Germer,* 617 So.2d 69 (La.App.), *writ denied,* 619 So.2d 549 (La.1993); *Daiquiri's III on Bourbon, Ltd. v. Wandfluh,* 608 So.2d 222 (La.App.1992), *writ denied,* 610 So.2d 801 (La.1993).

[7]*Comet,* 600 So.2d at 88 (emphasis in original), *cited in Medivision* and *Daiquiri's III.*

[8]618 So.2d 533 (La.App. 4th Cir.1993);  *see also Daiquiri's III* (court invalidates a noncompetition agreement without a territorial limitation).

[9]LRI also engaged in emissions monitoring, a different service, in seven additional Louisiana parishes, all in the southeast corner of the state.  Because Leak Stop did not offer a competing service, the district court did not include these parishes in the injunction.

and small parts of Texas and Arkansas.[10]

An employee barred from plying his trade within 200 miles of his home would be far more hesitant to leave his job than if the proscription affected a substantially smaller area. This increased hesitancy obviously impacts the bargaining relationship with the current employer. Were courts to reform and enforce agreements like those at bar, employers would be free routinely to present employees with grossly overbroad covenants not to compete. While the employer presumptively would know that the agreement would be enforced only to the limit of the law, the employee likely would not. The result would be an impact on the employer-employee relationship not intended by the legislature when it enacted the 1989 amendments. That type expansion is a matter better addressed to the Louisiana Legislature.

By invalidating the LRI agreements, we do not require employers to use "magic words." Rather, consistent with Louisiana jurisprudence, we require a geographic term which substantially conforms to the statute by identifying with reasonable certainty those areas in which the employer lawfully may prohibit competition. The instant LRI agreements do not satisfy this standard and therefore cannot be enforced.

The preliminary injunction is VACATED and judgment is RENDERED in favor of the defendants.

---

[10]At oral argument, LRI's counsel sought to justify the 200-mile figure by noting that LRI had a Mississippi customer 194 miles from Baton Rouge. To the contrary, this argument highlights the pitfall of describing the covered area by miles radius; there is no justification in preventing an employee from pursuing his occupation throughout virtually the entire State of Louisiana in order to protect the employer's relationship with one distant customer.