United States Court of Appeals,

Fifth Circuit.

Nos. 93-3566, 93-3664

Summary Calendar.

SMITH, BARNEY, HARRIS UPHAM & CO., INCORPORATED, Plaintiff-Appellee,

v.

Thomas E. ROBINSON, Sr., Defendant-Appellant.

Jan. 31, 1994.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Defendant-Appellant Thomas E. Robinson, Sr. appeals the district court's grant of a preliminary injunction in favor of Plaintiff-Appellee Smith, Barney, Harris Upham and Co., Inc. (Smith Barney), and its dismissal of his counterclaim for a permanent injunction of arbitration proceedings initiated by Smith Barney against him. This case centers around the enforceability of an employee's agreement not to solicit other employees of his employer after termination of such employee's employment, considered in light of La.R.S. 23:921.[1] We find that La.R.S. 23:921 does not apply to the instant agreement not to solicit employees of the former employer. The Agreement is also enforceable as written: it suffers neither from failure of consideration nor impermissible vagueness as to the beginning date of the one-year period during which Robinson expressly

---

[1]That statute provides:

> A. Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
>
> C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

contracted to abstain from soliciting Smith Barney's employees. We therefore affirm both the issuance of the preliminary injunction in favor of Smith Barney and the dismissal of Robinson's counterclaim.

I

FACTS AND PROCEEDINGS

Robinson was the branch manager of one of Smith Barney's brokerage offices. One of his "most important duties," Robinson asserts, was to recruit experienced brokers. He contracted annually with Smith Barney in 1991, 1992, and 1993 under three separate but identical agreements, each of which was entitled "Branch Managers' Incentive Compensation Plan Agreement" (the Agreement). The 1993 Agreement, like its predecessors, provided that

> [i]n consideration of payment of the 1993 Incentive Compensation to me, I agree that should my employment with Smith Barney terminate for any reason and I become employed at a competitor organization I will not for a one (1) year period directly or indirectly solicit or induce any Smith Barney employee to resign from either (a) the Smith Barney branch office at which I worked; or (b) any other Smith Barney branch office within a fifty (50) mile radius of the competitor organization's office at which I work, in order for that employee to accept employment at the competitor organization at which I work.

Robinson concedes that during 1993, he left Smith Barney's employ, began to work for a competitor organization, and, having been advised that the Agreement was unenforceable, knowingly breached the Agreement not to solicit Smith Barney's employees by actively recruiting those employees.[2]

Robinson made this promise in return for a promise from Smith Barney to allow him to participate in the firm's 1993 incentive compensation program. The exact amount of Robinson's incentive compensation was to be calculated after Smith Barney's 1993 profits were determined. He was to receive quarterly advances toward the subject compensation that he would ultimately be paid. In the event that Robinson were to resign from Smith Barney or that he were to be terminated for cause during 1993, he would be required to return any advances received in that year. The relevant provision of the Agreement reads:

> I further understand that I will not be entitled to any Incentive Compensation should I resign from Smith Barney or be terminated for cause prior to the date in 1994 when the 1993

---

[2]No Smith Barney employees thus solicited by Robinson ever resigned from Smith Barney to join the competitor organization for which Robinson works.

Incentive Compensation is paid to Branch Managers. In such instances I agree to promptly refund to Smith Barney all quarterly advance payments that I may have received.

In April 1993, Robinson received a $7,000 advance, which he did not repay after he voluntarily left Smith Barney's employ on June 17, 1993.[3] In the face of legal action threatened by Smith Barney, Robinson demanded that any dispute be arbitrated pursuant to the arbitration procedures of the National Association of Securities Dealers, Inc. (NASD).

Smith Barney initiated a New York Stock Exchange Arbitration against Robinson and his new employer, Morgan, Keegan & Co., Inc. (Morgan Keegan), (1) seeking damages for breach of the non-solicitation provision of the Agreement and identical provisions in the 1991 and 1992 Agreements, and (2) asking for a permanent injunction to prevent both Robinson's and Morgan Keegan's solicitation of Smith Barney's employees. On the same day that Smith Barney initiated the arbitration, it filed suit against Robinson (but not against Morgan Keegan) in district court, asking for a temporary restraining order (TRO) and preliminary and permanent injunctions against Robinson. Smith Barney represented that immediate injunctive relief was unavailable in the arbitration proceeding.

Robinson answered and counterclaimed for a permanent injunction prohibiting Smith Barney from proceeding with the arbitration. The asserted basis for that injunction is central to this dispute: Robinson claimed that the non-solicitation provision of the Agreement is unenforceable under La.R.S. 23:921, and that the Agreement may not legally be enforced for reasons that are unrelated to the statute. Therefore, he asserted, the Agreement may not form the basis of a valid arbitration award or a permanent injunction by the arbitrators against him. Robinson also moved the court to set the hearing on his counterclaim at the same time as the hearing on Smith Barney's requested injunctive relief. The district court denied Robinson's motion to hear both parties' requests for injunctive relief simultaneously.

Smith Barney withdrew its request for a TRO, and directly pursued a preliminary injunction against Robinson. At the hearing on Smith Barney's request for a preliminary injunction, Robinson

---

[3]Apparently Robinson left Smith Barney because of an impending decision to demote him from his position as Branch Manager after a merger took place.

challenged the enforceability of the Agreement on several grounds, specifically contesting its validity as a non-competition agreement under La.R.S. 23:921(A), its failure under 23:921(C) to list the specific parishes to which it applies, and its failure under that subsection to describe the part or parts of Smith Barney's multi-faceted businesses from which Robinson is prohibited from soliciting employees. Robinson also argued that the Agreement is void for two reasons unrelated to the statute, (1) failure of consideration, and (2) impermissible vagueness regarding the commencement of the one-year period during which he would be required to refrain from soliciting employees.[4]

The district court held that La.R.S. 23:921 did not excuse Robinson's admitted flagrant breach of the Agreement, and granted Smith Barney's request for a preliminary injunction barring Robinson from soliciting Smith Barney's employees to work for Morgan Keegan, effective July 28, 1993 (the date of the hearing), for a period of one year. Robinson appeals the issuance of that injunction.

Smith Barney moved to dismiss, under Federal Rule of Civil Procedure 12(b)(6), Robinson's counterclaim for permanent injunctive relief, and the district court dismissed the counterclaim. Robinson also appeals that dismissal order.

## II

## ANALYSIS

A. *Enforceability of Agreement*

1. Standard of Review

We review de novo the district court's determination that the Agreement is enforceable under Louisiana law.[5]

2. Applicability of La.R.S. 23:921

Smith Barney argues that La.R.S. 23:921 does not apply to the Agreement, primarily because the pre-1989 version of that statute did not apply to agreements not to solicit employees of the

---

[4]Robinson asserts that it could run from at least four different dates, (1) January 1, 1993, (2) the date of execution of the Agreement, (3) the date of termination of employment, or (4) the date on which final payment under the Agreement is made to Robinson.

[5]*Team Environmental Svcs., Inc. v. Addison,* 2 F.3d 124, 126 (5th Cir.1993) (citing *Concise Oil & Gas Partnership v. Louisiana Intrastate Gas Corp.,* 986 F.2d 1463 (5th Cir.1993)).

employer.[6]  The earlier version read,

> No employer shall require or direct any employee to enter into any contract whereby the *employee agrees not to engage in any competing business for himself, or as an employee of another,* upon the termination of his contract of employment with such employer....[7]

The present version appears on its face to be much broader in its application:  it expressly covers agreements in addition to those between employers and employees, and it prohibits agreements in addition to those not to "engage in any competing business."  It now reads,

> Every contract or agreement, or provision thereof, by which anyone is *restrained from exercising a lawful profession, trade, or business of any kind,* except as provided in this Section, shall be null and void.[8]

No case since the 1989 revision of the statute has discussed the applicability of the statute to agreements not to solicit employees of the employer.

We agree with Smith Barney that this Agreement does not possess the attributes of an agreement prohibited by La.R.S. 23:921.  Contrary to Robinson's assertions, the Agreement does not restrain Robinson from exercising a lawful profession, trade, or business.  As Smith Barney maintains, the Agreement *assumes* that Robinson will exercise his profession, presumably even as a branch manager, with a competitor firm.  Robinson is free to recruit stockbrokers or employees for Morgan Keegan—anywhere, any time, and from any organization—save only that small class comprising Smith Barney's employees, a class which he willingly agreed not to solicit.  The district court recognized that Robinson was not restrained from exercising a lawful profession, trade, or business when it issued the preliminary injunction.  The Agreement simply does not meet the definition of the kinds of contracts covered by the statute.

To find that the narrowly tailored Agreement falls within the ambit of the statute, we would have to conclude not only that recruiting is an indispensable ingredient of Robinson's profession but also that the Agreement prohibited Robinson from recruiting employees or stockbrokers to work for

---

[6]*Martin-Parry Corp. v. New Orleans Fire Detective Svc.,* 221 La. 677, 60 So.2d 83 (La.1952);  *John Jay Esthetic Salon, Inc. v. Woods,* 377 So.2d 1363, 1366 (La.App. 4th Cir.1979).

[7]Emphasis added.

[8]Emphasis added.

Morgan Keegan, which it clearly does not do. Smith Barney did not generally restrain Robinson from recruiting employees for Morgan Keegan. Instead, Smith Barney microscopically focused the Agreement at that aspect of Robinson's job that would be most damaging to Smith Barney—Robinson's recruitment of Smith Barney's employees to work for a competitor organization. Contrary to Robinson's hyperbole, that restriction does not prevent him from performing one of his "primary responsibilities" as a branch manager for a competitor organization, i.e., recruiting stockbrokers. We note in passing that subsection (C) of La.R.S. 23:921 mentions engaging in a similar business and soliciting *customers* but never mentions soliciting fellow employees. We consider this an implicit legislative recognition that, without more, a narrowly tailored covenant not to solicit employees of the employer is not among the kinds of agreements covered by the statute. We therefore conclude that the Agreement is not governed by La.R.S. 23:921. Having done so, we must decide only whether the Agreement is otherwise enforceable.

3. Enforceability of the Agreement

Robinson argued that the Agreement is void for two reasons unrelated to the statute: (1) failure of consideration, and (2) impermissible vagueness regarding the commencement of the one-year period during which Robinson is required to refrain from soliciting employees. Smith Barney counters that Robinson did receive consideration, and that the Agreement is not ambiguous as to the commencement date of the one-year period: it began on the date Robinson's employment was terminated.

First, Robinson argues that the 1993 Incentive Compensation has never been paid and thus there has been a failure of consideration. Robinson concedes that the Agreement requires him to refund the $7,000 advance. Therefore, insists Robinson, as Smith Barney has sought refund of that advance in the arbitration proceeding, he will have retained no consideration for not soliciting Smith Barney's employees. We disagree.

Smith Barney promised to pay the 1993 Incentive Compensation, preceded by advances against that amount, if the conditions of the Agreement were met. Robinson stipulated that if he were called to testify he would testify that he has received all compensation due him under the 1991 and

1992 Agreements, and has also received one advance in the amount of $7,000 toward the incentive compensation provided for in the 1993 Agreement. Robinson also admits that he agreed to—and is required to—return any quarterly advance payments received in the event that he voluntarily resigned before payment of the 1993 Incentive Compensation in early 1994. Robinson admits that he has not returned the $7,000 paid to him by Smith Barney. He cannot now argue that his being required to perform an unambiguous provision of a contract that he willingly entered—not once, not twice, but *three* times—causes a "failure of consideration." The Agreement is not a deed or a promissory note; it is a bilateral, commutative contract, the mutual and reciprocal promises of which supply the consideration for entering into the contract. There is no failure of consideration in this instance.

Second, Robinson asserts that the Agreement is unenforceable as written because it does not specify the commencement date of the period during which he is barred from soliciting Smith Barney's employees. Robinson asserts that it could run from at least four different dates: (1) January 1, 1993, (2) the date of execution of the Agreement, (3) the date of resignation, or (4) the date on which final payment under the Agreement is made to Robinson. Again, the relevant portion of the Agreement reads:

> I agree that should my employment with Smith Barney terminate for any reason and I become employed at a competitor organization I will not for a one (1) year period directly or indirectly solicit or induce any Smith Barney employee to resign....

The Agreement does not state precisely when the one-year period begins, but we are satisfied that it may only be interpreted to fix the beginning of the one-year period on the day that Robinson's employment terminates. Three of the four commencement dates suggested by Robinson suffer from a defect that would defeat the purpose of Robinson's agreement not to solicit Smith Barney's employees for the one-year period. If that period began on January 1, 1993, or the date of execution of the Agreement, or the date on which final payment under the contract is made to Robinson, the one-year period during which he would not be allowed to solicit Smith Barney's employees to work for a competitor organization would include time that he spent in the employ of *Smith Barney!* Smith Barney seeks by the Agreement to prevent Robinson from soliciting its employees during the time that it is most vulnerable to employee raiding by Robinson: the one-year period immediately

following the termination of his employment with Smith Barney. Robinson admits that the date of termination is a possible commencement date for that one year, and we find that the date of termination of employment is that date contemplated by the Agreement.[9]

B. *Dismissal of Counterclaim*

1. Standard of Review

This court also reviews de novo the dismissal of Robinson's counterclaim for failure to state a claim upon which relief can be granted.[10] A district court's decision to grant a Rule 12(b)(6) motion may be upheld "only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations."[11]

2. Power to Enjoin

The district court cannot interfere with an arbitration proceeding—without abusing its discretion—if a valid arbitration agreement exists and the specific dispute falls within the substance and scope of that agreement.[12] The court can then only affect those proceedings by vacating, modifying, or correcting an award after it is rendered.[13]

The district court properly dismissed Robinson's counterclaim for a permanent injunction of the arbitration proceeding for failure to state a claim upon which relief may be granted. Robinson made no allegation that a valid arbitration agreement does not exist; in fact, he demanded that Smith

---

[9]Of course, the determination that the commencement date of the one-year period is the date that Robinson resigned from Smith Barney does not affect the start date of the one-year period, the effective date of the injunction, July 28, 1993.

[10]*Barrientos v. Reliance Standard Life Ins. Co.,* 911 F.2d 1115 (5th Cir.1990), *cert. denied,* 498 U.S. 1072, 111 S.Ct. 795, 112 L.Ed.2d 857 (1991); *FDIC v. Ernst & Young,* 967 F.2d 166 (5th Cir.1992).

[11]*Baton Rouge Bldg. & Construction Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir.1986).

[12]*See Tai Ping Ins. Co., Ltd. v. M/V WARSCHAU,* 731 F.2d 1141, 1146 (5th Cir.1984); *PaineWebber Inc. v. Hartmann,* 921 F.2d 507 (3rd Cir.1990); *Nordin v. Nutri/System, Inc.,* 897 F.2d 339, 344 (8th Cir.1990); *Landry v. William B. Reily & Co.,* 524 So.2d 750, 752-53 (La.App. 3rd Cir.1988).

[13]*See* 9 U.S.C. § 10(a)(4); La.R.S. 9:4210(D); *Michaels v. Mariforum Shipping,* 624 F.2d 411, 414 (2nd Cir.1980).

Barney's claim be submitted to arbitration. Under these circumstances, the district court could not have interfered with an arbitration proceeding, and its dismissal of Robinson's counterclaim was proper. Even if we were to assume arguendo that a district court could properly enjoin an arbitration proceeding under these circumstances: As we conclude that the Agreement is enforceable, we would still affirm the district court's dismissal of Robinson's counterclaim.[14]

### III

### CONCLUSION

For the foregoing reasons, we conclude that the district court's grant of a preliminary injunction barring Robinson from soliciting employees of Smith Barney for a period of one year, as well as its dismissal of Robinson's counterclaim for permanent injunctive relief, were proper. The orders of the district court are in all respects.

AFFIRMED.

\* \* \* \* \* \*

---

[14]The district court dismissed Robinson's counterclaim as it sought nothing more than to enjoin an arbitration proceeding for what Robinson anticipates will be a potential erroneous decision.