# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 19-30363

———————

BROCK SERVICES, L.L.C.,

      Plaintiff - Appellee

v.

RICHARD ROGILLIO, also known as Ricky,

      Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

August 27, 2019

Lyle W. Cayce
Clerk

————————————

Appeal from the United States District Court
for the Middle District of Louisiana

————————————

Before CLEMENT, HAYNES, and WILLETT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Richard Rogillio worked for Brock Services, L.L.C. ("Brock") until he resigned to work for a direct competitor. Brock sued him for violating his employment agreement's non-compete provision and requested a preliminary injunction. The district court granted the injunction, and we affirm.

## FACTS AND PROCEEDINGS

Rogillio began working for Brock in the summer of 2010. At the time of his resignation in the fall of 2018, he was the Vice President of Operations for Brock's Eastern Region. When he joined Brock, Rogillio signed an Employment and Non-Competition Agreement ("Agreement").

No. 19-30363

Section 7.1 of the Agreement is a non-compete provision. It provides in relevant part:

> 7.1 <u>Non-Competition</u>. Employee acknowledges and agrees that the Company enters into this Agreement in consideration of and reliance on Employee's agreement to the following, which is intended to protect the Company's Business interests and goodwill, and to minimize the complexity and expense of protecting and enforcing the Company's rights in its Confidential Information . . . . Accordingly, in consideration for (i) the Agreement by the Company to commence and continue Employee's employment for the Employment Period, (ii) Employee's access to and receipt of Confidential Information of the Company . . ., (iii) Employee's promise contained herein not to disclose Confidential Information of the Company, during the Employment Period and for a period of one (1) year immediately following the termination of the Employee's employment (the "Restricted Period"), the Employee will not:
>
> (a) have any direct or indirect interest as an owner, investor, partner, lender, director, officer, manager, employee, consultant, representative, agent or in any other capacity in any competitive Business of the Company within the "Restricted Area" (as defined below);
>
> . . .
>
> (c) ["]Restricted Area" means the area within 100 mile radius of any actual, future or prospective customer, supplier, licensor, or business location of the Company, that Employee conducted business in Employee's capacity as an employee of the Company within the last one (1) year of Employee's employment with the Company, either physically, via mail or via electronic means, including but not limited to, as applicable, the parishes of Assumption, Caddo, Calcasieu, St. Charles, East Baton Rouge, Iberia, Livingston, Iberville, Jefferson, Ouochita [sic], Lafourche, Lafayette, Orleans, Plaquemines, Rapides, Vermillion [sic], St. Bernard, St. James, St. John, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebone [sic], Washington, and the municipalities of New Orleans and surrounding areas as well as the municipalities in the parishes listed above . . . .

2

No. 19-30363

Section 7.2 of the Agreement is a non-solicitation provision:

7.2 Non-Solicitation. During the Employment Period and for a period of one (1) year immediately following the termination of the Employee's employment, the Employee shall not (i) cause, solicit, induce or encourage any employees of the Company to leave such employment or hire, employ or otherwise engage any such individual; or (ii) cause, induce or encourage any material actual or prospective client, customer, supplier, or licensor of the Company (including any existing or former customer of the Company and any person that becomes a client or customer of the Company after the date of this Agreement) or any other person who has a material business relationship with the Company, to terminate or modify any such actual or prospective relationship.

Section 9 of the Agreement is a severability clause:

9. Severable Provisions. The provisions of this Agreement are severable and the invalidity of any one or more provisions shall not affect the validity of any other provision. In the event that a court of competent jurisdiction shall determine that any provision of this Agreement or the application thereof is unenforceable in whole or in part because of the duration or scope thereof, the parties hereto agree that said court in making such determination shall have the power to reduce the duration and scope of such provision to the extent necessary to make it enforceable, and that the Agreement in its reduced form shall be valid and enforceable to the full extent permitted by law.

Section 11.2 of the Agreement is an integration clause:

11.2 Entire Agreement; Amendment. This Agreement constitutes the entire Agreement between the parties hereto with regard to the subject matter hereof, superseding all prior understandings and agreements, whether written or oral. This Agreement may not be amended or revised except by a writing signed by the parties.

(emphases omitted).

When Rogillio resigned from Brock, he went to work for a direct competitor, Apache Industrial Services, LLC ("Apache"), as a Vice President. Rogillio's Apache office is in Ascension Parish, which is not listed in the

3

No. 19-30363

Agreement. As part of his new position, Rogillio managed Apache employees in at least some of the parishes listed in the Agreement. He also met with Brock customers in some of the listed parishes.

Brock learned of Rogillio's work and sued to enforce the Agreement.[1] Brock sought a temporary restraining order and preliminary injunction. During the hearing on the motion, Brock conceded, and the district court held, that subsection 7.1(c) of the Agreement was overbroad because it was not limited to specified parishes and municipalities, as required by Louisiana law. Citing the severability provision, the court reformed the definition of the Restricted Area as follows:

> (c) ["]Restricted Area" means the area that Employee conducted business in Employee's capacity as an employee of the Company within the last one (1) year of Employee's employment with the Company, either physically, via mail or via electronic means, including, as applicable, the parishes of Assumption, Caddo, Calcasieu, St. Charles, East Baton Rouge, Iberia, Livingston, Iberville, Jefferson, Ouachita, Lafourche, Lafayette, Orleans, Plaquemines, Rapides, Vermilion, St. Bernard, St. James, St. John, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Washington, and the municipalities of New Orleans.

The district court then found that subsection 7.1(a) was ambiguous as to whether Rogillio had to be physically present in the restricted parishes to violate the Agreement. The court resolved that ambiguity in Rogillio's favor, ruling that he needed to be physically present. The court found that Brock was unlikely to succeed on the merits under that subsection because Rogillio testified that he had not physically worked in any restricted parish. According to the district court, with respect to the customer non-solicitation provision

---

[1] Brock also sued Rogillio, other former employees, and Apache for misappropriating confidential information. Those claims are not at issue in this appeal.

4

(subsection 7.2(ii)), "the parties . . . agreed that that is either not enforceable or at least [it's] not being sought to be enforced."

The district court denied Brock's motion for a preliminary injunction. Regarding the Agreement's ambiguity, the court noted that "the general rule is that parol evidence is allowed when there's ambi[g]uity and I would expect that there will be testimony on the issue of what was intended by the parties." In response, Brock renewed its motion for a preliminary injunction so that it could introduce evidence concerning the parties' intent.

At a second preliminary injunction hearing, Brock's former general counsel responsible for drafting the Agreement testified that the intent of subsection 7.1(a) was to restrict the former employee from working for a competitor in the restricted parishes, whether physically, electronically, or indirectly by managing an employee. She testified that the provision was meant to restrict the former employee "from doing whatever services in whatever capacity he provided to Brock to a competitive business after he leaves us." A former executive of Brock's parent company also testified that Rogillio had "assured [him] that he would honor his non-compete and in fact . . . may have to travel to Texas to gain employment because that would not be impacted by the non-compete that he had." Rogillio testified that he didn't remember his intent in agreeing to the non-compete provision. Following the hearing, Brock submitted expense reports showing Rogillio having customer and staff meetings in restricted parishes both as a Brock employee and as an Apache employee.

The district court found that Brock had demonstrated a likelihood of success on its claim that Rogillio breached the non-compete provision,[2] and

---

[2] Rogillio also claimed that Brock breached certain other contracts that excused his failure to perform under the Agreement. The district court found this argument unpersuasive. Rogillio does not renew this argument on appeal, so he has waived it. *See*

No. 19-30363

that the balance of harms and public interest weighed in favor of a preliminary injunction. The court enjoined Rogillio from "performing or managing any work, including by phone, over the Internet, or in person" in the restricted parishes until September 3, 2019. Rogillio timely appealed and requested expedited review, which we granted.

## STANDARDS OF REVIEW

"We review a preliminary injunction for abuse of discretion, reviewing findings of fact for clear error and conclusions of law *de novo*." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 537 (5th Cir. 2013). The enforceability of restrictive covenants is reviewed de novo. *Team Envt'l Servs., Inc. v. Addison*, 2 F.3d 124, 126 (5th Cir. 1993). Whether a contract is ambiguous is a question of law. *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013). "If a contract is ambiguous, the district court's findings of fact as to the intent of the parties are reviewed for clear error." *Id.* "A factual finding is clearly erroneous only if, based on the entirety of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made." *United States v. Cordova-Soto*, 804 F.3d 714, 718 (5th Cir. 2015).

## DISCUSSION

A party seeking a preliminary injunction generally must show (1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction is not granted, (3) that the injury outweighs any harm to the other party, and (4) that granting the injunction will not disserve the public interest. *Cardoni v. Prosperity Bank*, 805 F.3d 573, 579 (5th Cir. 2015). A preliminary injunction may be issued on a *prima facie* showing that the party seeking it is

---

*Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir. 2004) ("Issues not raised or inadequately briefed on appeal are waived.").

entitled to relief. *See Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011). Under Louisiana law governing restrictive covenants, the party seeking the preliminary injunction need not show irreparable injury but only that the employee failed to perform under the contract. LA. STAT. ANN. § 23:921(H). The party seeking the injunction must carry the burden of persuasion. *Bluefield Water Ass'n v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009). Primarily, Brock needed to show that the Agreement was enforceable and that Rogillio breached the non-compete provision.

## I.    Reformation and Interpretation of the Agreement

### A. Reformation of the geographic limitations

Rogillio first argues that the Agreement is unenforceable because the district court erred in reforming it. He contends that the court was not required to reform the geographically overbroad provision and that he could not have known when he signed the Agreement where he would be prohibited from working because he did not know at the time where he would work in the year before he left Brock. Brock responds that the district court properly relied on the severability clause to reform the Agreement and that the specified parishes informed Rogillio where he would be prohibited from working.

Restrictive covenants are unfavored in Louisiana and are narrowly and strictly construed. *See, e.g.*, *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 288 (5th Cir. 2012). The statute governing restrictive covenants provides that "[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable." LA. STAT. ANN. § 23:921(A)(1). Under § 23:921(C), "[a]ny person . . . may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer

7

and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment."

A non-compete provision "must strictly comply with the requirements of the statute." *Dixie Parking Serv., Inc. v. Hargrove*, 691 So. 2d 1316, 1320 (La. Ct. App. 1997). But if the provision is geographically overbroad, the court may rely on a severability provision to reform the overbroad provision and "excise the offending language." *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So. 2d 294, 309 (La. 2001), *superseded by statute on other grounds*, LA. STAT. ANN. § 23:921(D), *as recognized in Lemoine v. Baton Rouge Phys. Therapy, L.L.P.*, 135 So. 3d 771, 774 (La. Ct. App. 2013); *see also Class Action Claim Servs., L.L.C. v. Clark*, 892 So. 2d 595, 600 (La. Ct. App. 2004) ("[W]hen a non-compete clause is overbroad in its geographical boundaries, the Court should delete the overbroad portions and enforce the remainder of the geographic restriction provision.").

The severability provision in the Agreement specifically provides for reformation if a court finds a provision "unenforceable in whole or in part because of the duration or scope thereof." The district court excised the overbroad language so that the restriction applied only to the specific parishes and municipality already identified. The court did not err in doing so.

Rogillio's argument about being unable to "determine on the 'front end' where he would be prohibited from competing" is similarly unavailing. He relies on a district court case in which the restrictive covenant at issue prohibited a former employee from working in "the Louisiana Parishes and/or Municipalities that are included within [Employee's] identified Medtronic sales territory" or "that Medtronic engaged in business within and that [Employee] services . . . supported." *Waguespack v. Medtronic, Inc.*, 185 F.

Supp. 3d 916, 929 (M.D. La. 2016) (alterations in original). The district court found that the geographic limitations were invalid under § 23:921 because the restricted parishes were not identified and "there was no way for Plaintiffs to determine—on the front end—what their potential restrictions would be." *Id.* (relying on *Aon Risk Servs. of La., Inc. v. Ryan*, 807 So. 2d 1058, 1062 (La. Ct. App. 2002)).

In both *Waguespack* and *Aon Risk Services*, the courts found the non-compete provisions invalid because they did not identify *any* specific parishes or municipalities where the employee would be restricted. *See id.*; *Aon Risk Servs.*, 807 So.2d at 1060 ("The geographic scope of the agreement is described to be 'whatever parishes, counties and municipalities . . .' in which [the companies] conducted business."). That is not the case here. Rogillio's non-compete provision specified particular parishes and the municipality of New Orleans. The reformation served only to narrow the provision's scope by removing catch-all clauses that went beyond the listed parishes, not to identify specific parishes after the fact. When signing the Agreement, Rogillio knew that he could be prohibited from working in the identified parishes, and that restriction is the only one the district court enforced following reformation. The reformed Agreement is not invalidly overbroad.

### B. Use of parol evidence

Rogillio also contends that the district court erred in interpreting the Agreement's non-compete provision by applying contract law other than the principle that ambiguous contracts should be construed against the drafter, and in considering parol evidence despite the Agreement's integration clause. Brock responds that general rules of contract interpretation still apply to restrictive covenants, and that parol evidence is permitted to interpret an ambiguous contract.

9

The district court found that subsection 7.1(a) was ambiguous with respect to whether Rogillio must be physically present in restricted parishes to violate the provision. Rogillio does not challenge this finding.

"A noncompetition agreement is a contract between the parties who enter it, and it is to be construed according to the general rules of contract interpretation." *Reg'l Urology, L.L.C. v. Price*, 966 So.2d 1087, 1091 (La. Ct. App. 2007). Interpreting a contract is a matter of determining the parties' common intent. LA. CIV. CODE ANN. art. 2045. When a contract is unambiguous, we look only to the four corners of the contract to interpret it. *Id.* art. 2046. But, "when the terms of a written agreement are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or to show the intention of the parties." *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 563 (5th Cir. 2005); *see also Scafidi v. Johnson*, 420 So. 2d 1113, 1115 (La. 1982) ("Between the parties to an instrument, parol evidence is admissible . . . to explain an ambiguity when such explanation is not inconsistent with the written terms . . . ." (quotation omitted)). "If an ambiguity remains after applying the other general rules of construction, then the ambiguous contractual provision is to be construed against the drafter." *Chinook USA, L.L.C. v. Duck Commander, Inc.*, 721 F. App'x 361, 366 (5th Cir. 2018) (citing LA. CIV. CODE ANN. art. 2056 ("In case of doubt *that cannot otherwise be resolved*, a provision in a contract must be interpreted against the party who furnished its text." (emphasis added))).

The district court did not err in applying general rules of contract law to interpret subsection 7.1(a). Even though restrictive covenants "must be strictly construed against the party seeking their enforcement," *SWAT 24*, 808 So. 2d

at 298, the district court properly considered parol evidence to determine the parties' intent.[3]

The Agreement's integration clause does not alter this conclusion. An integration clause "is a provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document." *Condrey*, 429 F.3d at 564 (quotation omitted). Rogillio argues that parol evidence is inadmissible because the Agreement is not incomplete. *Cf. id.* ("Parol evidence is admissible to show that the written agreement was incomplete and was not intended by the parties to exhibit the entire agreement." (quotation omitted)). But the district court admitted parol evidence not to vary, add to, or modify the terms of the Agreement; it did so to determine the parties' intent as to the meaning of ambiguous terms. *See Diefenthal v. Longue Vue Mgmt. Corp.*, 561 So. 2d 44, 51 (La. 1990) (holding that parol evidence is inadmissible to vary the terms of a contract but "is admissible to clarify [an] ambiguity and to show the intent of the parties"); *see also Chinook USA*, 721 F. App'x at 366–67 (considering parol evidence to interpret an ambiguous contract with an integration clause).

Rogillio argues only that the district court erred in admitting parol evidence. He does not contend that—assuming the evidence was properly admitted—the court's factual findings as to the parties' intent are erroneous. Nor do we find them to be clearly erroneous. The court did not err in admitting parol evidence and determining the parties' intent as to the meaning of subsection 7.1(a) regarding where Rogillio needed to be working for Apache in order to violate the provision.

---

[3] Even if the district court had construed the Agreement in favor of Rogillio without admitting parol evidence, subsection 7.1(a) would be interpreted to restrict him from physically working for Apache in the restricted parishes. As discussed below, there was evidence of Rogillio doing exactly that.

## II.    Breach of the Agreement

Rogillio argues that the only evidence of a possible breach of the Agreement was of customer solicitation, and because that is not prohibited by section 7.1, Brock failed to show that he violated the Agreement. Rogillio also argues that Brock did not introduce evidence showing he ever conducted business for Brock in the restricted parishes, only that he is now doing work for Apache. Brock responds that solicitation is included in section 7.1, and that regardless, Brock introduced evidence of Rogillio otherwise competing in restricted parishes.

The district court held that there was evidence that Rogillio breached section 7.1. The court found that Rogillio had worked in the restricted parishes as a manager by meeting with subordinates and by electronically contacting and physically meeting with Brock customers. The court stated that the latter was relevant to the issue of breach (even though Brock is not attempting to enforce the Agreement's explicit non-solicitation provision) because contracts often contain redundancies and solicitation is a form of competition.

The district court did not clearly err in finding that there was evidence of Rogillio working for Brock in restricted parishes and working for Apache in restricted parishes. The parties stipulated that "Brock does business in all parishes listed in the employment agreement" and that "Rogillio is managing employees on behalf of Apache in at least some of the listed parishes in the employment agreement." In addition, Brock produced evidence that Rogillio conducted business for Brock, including staff and customer meetings, in at least some of the restricted parishes, including East Baton Rouge Parish. Brock also produced evidence of Rogillio physically conducting Apache business by meeting with staff in some restricted parishes, including East Baton Rouge Parish. So, there was evidence of Rogillio conducting business for

Brock in restricted parishes and Rogillio conducting business for Apache (including but not limited to customer solicitation) in restricted parishes.

The district court's reliance on evidence of customer solicitation was unnecessary to the finding of breach. Once the court found that Brock had made a prima facie case based on Rogillio's Apache staff meetings in restricted parishes, Brock was entitled to a preliminary injunction. *See* LA. STAT. ANN. § 23:921(H) ("[U]pon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court . . . shall order injunctive relief enforcing the terms of the agreement."); *see also Ethan & Assocs., Inc. v. McKay*, No. 2005 CA 2567, 2006 WL 3544807, at *5 (La. Ct. App. Dec. 6, 2006) ("Pursuant to [§ 23:921(H)], upon such proof of . . . failure to perform in accordance with their respective employment agreements, [the employer] was entitled to injunctive relief enforcing the entirety of the employment agreements without establishing that McKay and Mosely had breached each individual obligation of the employment agreement.").[4]

## III. Granting the preliminary injunction

The district court did not err in finding a likelihood of success on the merits. The Agreement is enforceable and there was prima facie evidence of Rogillio breaching section 7.1. Rogillio has not shown that the district court abused its discretion in finding the balance of harm and public interest weigh in Brock's favor. The burden on Rogillio is minimal, as the preliminary injunction will only be in force for four months, and the area in which he is

---

[4] It is unclear whether the district court determined that subsection 7.1(a) unambiguously included customer solicitation, or whether the court found that the provision was ambiguous and that the parties intended it to include solicitation. But we need not parse the district court's analysis on this point or decide whether its interpretation was correct. The evidence that Rogillio met with Apache staff in restricted parishes provides an independent ground to affirm the injunction. Should Brock seek to prove damages, however, it may be necessary for the district court to address the solicitation issue more clearly.

restricted from working is not geographically overbroad. While restrictive covenants are disfavored in Louisiana, the one at issue here meets the requirements of the law, so the injunction does not disserve the public.

## CONCLUSION

For the foregoing reasons, we AFFIRM.