# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 31, 2022

Lyle W. Cayce
Clerk

No. 22-20024

Sentry Equities, Ltd.; Sentry Holding Company, L.L.C.; Robert W. Haas,

*Plaintiffs—Appellants*,

*versus*

Allstate Life Insurance Company, doing business as Northbrook Life Insurance Company; Allstate Assurance Company, doing business as Northbrook Life Insurance Company; Life Inforce Processing; Morgan Stanley; Company, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-52

Before Stewart, Elrod, and Graves, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 22-20024

This appeal arises out of a dispute over the terms of a life insurance policy that was obtained in the 1980s. The policy holder filed suit on grounds that the insurer breached the terms of the policy by unilaterally lowering the interest rate which caused the cash value of the policy to decrease. The district court disagreed, denied the policy holder's motion for summary judgment, and dismissed the suit in its entirety. The policy holder now appeals. For the following reasons, we affirm.

## I. Factual & Procedural Background

In 1988, Sentry Equities, Ltd., Sentry Holding, LLC, and Robert W. Haas (collectively, "Haas") purchased a Single Premium Life Insurance Policy[1] (the "Policy") from Allstate Life Insurance Company, et al. (collectively, "Allstate"). The Policy had a maturity date of May 11, 2049, and a $350,000 cash value that was to increase each year based on a compounding interest rate. The Policy terms permitted Haas to take out loans against the Policy, which he did on occasion, subject to various interest rates to be determined at the time the loans were obtained. The Policy provided that "[t]he basis of the guaranteed cash values is 7.75 percent interest the first year, 6 percent interest thereafter, and the maximum annual costs of insurance." Then, under a section titled "Cash Values," the Policy provided that "[t]he rate(s) of interest earned on the cash value will be declared by us. The rate(s) of interest earned on the unloaned cash value will not be less than 4%."

On May 22, 2020, in response to a "concern" that Haas had expressed, Allstate sent a letter to him that explained:

> Your policy has a cash value. Each year, the cash value
> grows with interest and we deduct a cost of insurance

---

[1] Policy No. 510 817 4187.

No. 22-20024

> (COI) charge. Two of the guarantees available on your policy are a 4% guaranteed interest rate and guaranteed maximum COI charges. In other words, your interest rate will never drop below 4%, and the COI charges will never exceed the maximum COI charges specified in your policy.
>
> Your policy also has a guaranteed cash value which acts as an additional layer of protection. The cash value will never be less than the guaranteed cash value amounts shown on page 4 of your policy. The guaranteed cash value amounts are calculated based on the assumptions that the initial premium grows at a 6% interest rate and maximum COI charges are deducted. The 6% interest rate is not a guarantee, but one of the factors used to calculate the guaranteed cash value. Your current cash value is more than the guaranteed cash value, even though the policy currently earns 4% interest, because current COI charges have been less than maximum COI charges.
>
> **As of your last anniversary, we decreased the interest rate from 6% to 4% in response to unfavorable market conditions.** The COI charges remained unchanged. As discussed above, your policy's current credited interest rate, COI charges, and guaranteed cash value align with the guarantees provided by the policy.

According to Haas, Allstate's actions as described in the May 2020 letter constituted a material breach of the Policy terms because it unilaterally decreased the interest rate guaranteed by the Policy from 6% to 4%.

Haas filed suit against Allstate in state court in December 2020, and Allstate removed the case to federal court in January 2021. Shortly after removal, Allstate moved to dismiss the case pursuant to Rules 12(b)(1) &

3

12(b)(6). *See* Fed. R. Civ. P. 12(b)(1), (6). The district court denied Allstate's motion in March 2021. Haas then moved for summary judgment on his breach of contract claims in October 2021. In his motion, Haas summarized the testimony of two expert witnesses in support of his claims. In December 2021, Allstate also moved for summary judgment. Haas then moved for and received a continuance on January 4, 2022, seeking additional time to respond to Allstate's summary judgment motion. Finally, on January 13, 2022, the district court denied Haas's motion for summary judgment and dismissed the suit. In its Memorandum and Order the district court stated:

> In the Court's view, the terms of the Policy are unambiguous, hence, the opinions of experts are unnecessary . . . Notably, Sentry/Haas does not assert that the Policy terms are ambiguous. Hence, the sole question is whether the Policy empowers Allstate to vary the interest in the Policy from time-to-time within its discretion. The Court is of the opinion that the Policy permits Allstate to vary [the] rate(s) of interest earned on the unloaned cash value [so long as] the unloaned cash value will not drop below 4%, []and so long as the Policy's Cash Value meets or exceeds the corresponding values represented on the Table of Guaranteed Values set out in the Policy.

> There is no evidence that the Cash Value of Haas' Policy ever fell below the values set out in the Table of Guaranteed Values. The Court concludes that Sentry/Haas' motion for summary judgment is unmeritorious and that it should be Denied. Moreover, because Haas is still alive, and no request to surrender the policy has been made, the suit is DISMISSED in its entirety.

Haas filed this appeal.

No. 22-20024

## II. Standard of Review

We conduct a de novo review of a district court's denial or grant of summary judgment. *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (denial); *Molina v. Home Depot, USA, Inc.*, 20 F.4th 166, 168 (5th Cir. 2021) (citation omitted) (grant). "Typically, a district court may grant summary judgment only on grounds requested by the moving party." *Molina*, 20 F.4th at 169. A district court must provide the parties ten days' notice before granting summary judgment sua sponte. *Id.* If it fails to provide the requisite notice, however, we review for harmless error. *Id.* "Error is harmless if the nonmovant has no additional evidence or if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact." *Id.* (internal quotation marks and citations omitted).

## III. Discussion

"Under Texas law, '[i]nsurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally.'" *O'Brien's Response Mgmt., LLC v. BP Expl. & Prod., Inc.*, 24 F.4th 422, 428 (5th Cir. 2022) (quoting *Richards v. State Farm Lloyd's*, 597 S.W.3d 492, 497 (Tex. 2020)). In construing contracts, "Texas courts give terms their plain, ordinary and generally accepted meaning . . . [and] will enforce the unambiguous document as written." *Id.* (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) (internal quotation marks and citations omitted)). "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous" and will be construed "as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). An ambiguity is not created by the fact that the parties offer different contract interpretations. *Id.* Rather, an "ambiguity exists only if the

contract language is susceptible to two or more reasonable interpretations." *Id.*

On appeal, Haas takes a "kitchen sink" approach and attempts to construct numerous errors of law out of the district court's brief ruling. To summarize, he argues that the district court erred in: (1) holding that the Policy terms were unambiguous, (2) excluding his expert witness testimony, (3) holding that Allstate did not breach the Policy terms, (4) holding that the cash value of the Policy never fell below the amounts guaranteed by the Policy terms, (5) blue-penciling the Policy language, (6) granting summary judgment in favor of Allstate, and (7) failing to consider his arguments regarding the Texas Insurance Code[2] and the Deceptive Trade Practices Act ("DTPA").[3] We address each argument in turn.

### A. Ambiguity of the Policy Terms & Exclusion of Expert Testimony

As a preliminary matter, Haas did not make an argument to the district court that the Policy terms were ambiguous. Instead, he repeatedly argued in his summary judgment motion that the contract was "wholly unambiguous." On appeal, however, Haas makes the opposite argument by contending that "[t]he life insurance policy in question contains, at best, two phrases which are contradictory." He then compares the part of the Policy that states that the interest rate will be 6% beginning in year two with the part of the Policy that references the 4% minimum interest rate. Because Haas did not argue that the Policy was ambiguous to the district court, he has waived the argument on appeal. *See Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 833

---

[2] TEX. INS. CODE § 541.001, et seq.

[3] TEX. BUS. & COM. CODE § 17.41, et seq.

(5th Cir. 2022) ("But that argument was not raised before the district court, so we do not consider it here.").

Nevertheless, our analysis of Haas's remaining arguments regarding the Policy and the district court's exclusion of his expert witness testimony requires that we determine whether the Policy is ambiguous. We hold that it is not. The Policy provides that "[t]he basis of the guaranteed cash values is 7.75 percent, 6 percent interest thereafter, and the maximum annual costs of insurance." Under the "Cash Values" section, the Policy provides that "[t]he rate(s) of interest earned on the unloaned cash value will not be less than 4%." This language provides the parameters of the interest rate as being set at 7.75% on year one, 6% thereafter, with a guaranteed minimum interest rate of 4%. It is not ambiguous because it is not "susceptible to two or more reasonable interpretations." *See Schaefer*, 124 S.W.3d at 157. In other words, an ambiguity is not created simply because the Policy permits a fluctuation of interest rates within a range specified by the Policy terms. Haas's attempt to offer his own self-serving alternative interpretation of the Policy language does not change that. *Id.* Moreover, because the Policy terms are not ambiguous, the district court properly excluded Haas's expert witness testimony. *See Brock Servs., LLC v. Rogillio*, 936 F.3d 290, 298 (5th Cir. 2019) ("When a contract is unambiguous, we look only to the four corners of the contract to interpret it.").

### B. Breach of the Policy Terms & the Guaranteed Cash Value of the Policy

Given our determination that the Policy terms are unambiguous, the only remaining question is whether Allstate breached the terms of the Policy by reducing the interest rate from 6% to 4%. "Breach of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as

contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). Here, neither party disputes that a valid contract exists or that Haas performed as contractually required under the Policy. Accordingly, as the district court observed, "the sole question is whether the Policy empowers Allstate to vary the interest in the Policy from time-to-time within its discretion." In answering in the affirmative, the district court reasoned that "the Policy permits Allstate to vary [t]he rate(s) of interest earned on the unloaned cash value [so long as] the unloaned cash value will not drop below 4%, []and so long as the Policy's Cash Value meets or exceeds the corresponding values represented on the Table of Guaranteed Values set out in the Policy."

A review of the Policy's plain language indicates that the district court's interpretation of the Policy terms is correct. Page 4 of the Policy provides that "[t]he rate(s) of interest earned on the cash value will be declared by us." This language clearly permits Allstate to vary the interest rate on the unloaned cash value. The Policy then states that "[t]he rate(s) of interest earned on the unloaned cash value will not be less than 4%." This language clearly limits Allstate's ability to lower the interest rate to no less than 4%. In turn, the Table of Guaranteed Cash Values functions as a separate guarantee that the cash value of the Policy will never fall below a certain specified amount regardless of the interest rate. Read together, these terms permit Allstate to vary the interest rate within a range specified by the Policy terms, *i.e.*, between 4% and 6%. As the record reveals and as the district court correctly pointed out, "[t]here is no evidence that the Cash Value of Haas' Policy ever fell below the values set out in the Table of Guaranteed Values" due to Allstate's lowering the interest rate per the Policy terms. Consequently, we agree with the district court that Haas has failed to prove

that Allstate breached the terms of the Policy. *Pathfinder Oil & Gas, Inc.*, 574 S.W.3d at 890.

### C. Whether the District Court Blue-Penciled the Policy

Haas next contends that the district court impermissibly "blue-penciled" an extra clause into the Policy. *See Lloyd's Syndicate 457 v. FloaTEC, LLC*, 921 F.3d 508, 518 (5th Cir. 2019) (noting that the court cannot "blue-pencil" an extra clause into the contract). We disagree. Here, the district court merely inserted the words "so long as" between the existing contract language to point out that two provisions in the Policy (the 4% minimum interest rate language and the guaranteed cash value language) were related and to be read together. The district court's insertion of these three words did not alter the terms of the contract and thus, did not constitute a form of blue-penciling. *See Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054 (La. 5/22/07); 956 So.2d 583, 589 ("Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms."). Haas's argument to the contrary is meritless.

### D. The District Court's Dismissal of the Suit & the Texas Insurance Code & Deceptive Trade Practices Act

Haas argues that the district court improperly granted summary judgment in favor of Allstate and dismissed his case without giving him the requisite notice prior to issuing its judgment. While we are not convinced that the district court's dismissal was improper, we agree that the precise nature of the district court's dismissal of the suit was not entirely clear. Our review of the record shows that Haas moved for summary judgment in October 2021, and while that motion was pending, Allstate moved for summary judgment in December 2021. Haas subsequently moved for and received an unopposed continuance on January 4, 2022, in which he requested fifteen

additional days to respond to Allstate's summary judgment motion. Then, on January 13, 2022, while Allstate's December 2021 summary judgment motion was still pending, the district court denied Haas's motion for summary judgment. In the same order, the district court dismissed the suit in its entirety but did not specify the context from which its dismissal arose.

Allstate argues that the district court's dismissal of the suit may have arisen from its dormant December 2021 summary judgment motion. Alternatively, Allstate suggests that pursuant to Federal Rule of Civil Procedure 54(b), the district court may have dismissed the suit after reconsidering and reversing its prior order denying Allstate's Rule 12 dismissal motion. Nevertheless, because the district court's order is silent as to this issue and Allstate's summary judgment motion was the only motion pending at the time of the dismissal, we assume for purposes of our analysis that the dismissal order arose from that motion as Haas contends. The question now becomes whether the district court erred in granting summary judgment in favor of Allstate without providing the requisite notice to Haas.

As stated, a district court must provide the parties ten days' notice before granting summary judgment sua sponte. *Molina*, 20 F.4th at 169. If the district court fails to provide the requisite notice, we review for harmless error. *Id.* We consider the error harmless if the nonmovant (1) has no additional evidence to offer in support of his claims or (2) if the appellate court reviews all of the nonmovant's additional evidence and concludes that none of the evidence presents a genuine issue of material fact. *Id.* (internal quotation marks and citations omitted); *see also Lexcon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315, 321 (5th Cir. 2021) (same).

Haas contends on appeal that when the district court granted his continuance motion on January 4, he had planned to respond to Allstate's summary judgment motion advancing additional arguments related to the

Policy's cash value and certain extracontractual statutory claims. He argues that the district court's dismissal of his suit without sufficient notice deprived him of this opportunity. We disagree.

As a preliminary matter, we note that Haas did not state in his continuance motion that he planned to submit additional evidence in support of his arguments related to the Policy's cash value or any extracontractual claims. Rather, he stated that he was requesting the continuance because it was the holidays, his counsel's office had recently moved, and several of its staff members had been recently diagnosed with COVID-19. Nevertheless, assuming that, as Haas argues on appeal, he had additional evidence to offer on the Policy's cash value and his extracontractual claims, he still could not have prevailed in his suit against Allstate. As we have held infra, Haas's breach of contract claims fail as a matter of law. Additionally, because the Policy's terms are unambiguous, the district court properly excluded Haas's proposed expert witness testimony relating to the Policy's cash value. Further, under Texas law, Haas cannot recover damages from Allstate based on an alleged extracontractual statutory violation, such as a DTPA or Texas Insurance Code violation, because he has failed to "establish[] a right to receive benefits under the policy or an injury independent of a right to benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018). Consequently, he cannot prevail on these claims regardless of whether

No. 22-20024

he presents more evidence. *Id.*[4] On this basis, we conclude that no genuine issue of material fact remains in Haas's suit. *See Molina*, 20 F.4th at 169.[5] Accordingly, the district court's issuance of summary judgment and dismissal of the suit without the requisite notice was harmless error. *Id.*

## IV. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[4] Haas's arguments under the Texas Insurance Code and the DTPA also fail on the merits. There is no record evidence that Allstate engaged in unfair claim settlement practices or misrepresented a material fact or policy provision relating to coverage under the Policy. *See* TEX. INS. CODE §§ 541.003, 541.060, 541.061; *see also Chamrad v. Volvo Cars of N. Am.*, 145 F.3d 671, 672 n.3 (5th Cir. 1998) (citing *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472 (Tex. 1995)) ("The elements of a DTPA cause of action are: 1) The plaintiff is a consumer; 2) the defendant engaged in false, misleading, or deceptive acts; and 3) these acts constituted a producing cause of the consumer's damages."). To the contrary, the record evidence demonstrates that Allstate sent numerous letters to Haas over the years explaining the Policy terms after he requested clarification.

[5] Moreover, "[w]e have reasoned that at some point a court must decide that a plaintiff has had fair opportunity to make his best case, and if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Anokwuru v. City of Houston*, 990 F.3d 956, 967 (5th Cir. 2021) (alterations, internal quotation marks, and citation omitted). Haas had over a year between the day he filed suit against Allstate and the day the district court dismissed his case, yet he failed to provide sufficient evidence to support his breach of contract or extracontractual claims. Thus, it was reasonable for the district court to issue summary judgment and dismiss the suit on grounds that Haas had a fair opportunity to make his best case but failed to do so. *Id.*